DANIELS v. WAGNER (and 15 other cases).

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,217.

WOODS AND FORESTS (§ 8\*)—FOREST RESERVATION—EXCHANGE FOR LIEU LAND —VESTED RIGHT TO SELECTION.

A selector of lieu land in exchange for patented land within a forest reservation, under Act June 4, 1897, c. 2, 30 Stat. 34 (U. S. Comp. St. 1901, p. 1541), acquires no vested right or equitable interest in the land selected merely by the filing of deeds of relinquishment and lieu selection papers in the local land office; but until the exchange and selection have been approved by the Commissioner of the General Land Office, such officer may reject the selection and award the land to a subsequent entryman.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.\*]

Appeal from the District Court of the United States, for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by A. D. Daniels against Jessie E. Wagner, heard

with 15 other cases brought by the same complainant. Decrees for defendants, and complainant appeals. Affirmed.

For opinion below, see 194 Fed. 973.

The decision in this case involves the merits of 16 suits pending in this court on appeal, in all of which A. D. Daniels, the appellant, was the complainant in the court below. The object of each suit was to obtain a decree declaring the defendants therein holders of the legal title to the land described in each case as trustees for said complainant. Demurrers to the bills for want of equity were sustained, and from the decrees thereupon rendered dismissing the bills the appeals are taken.

The allegations in the bills are substantially the same. In the case which is above entitled, the allegations are in substance the following: That on and prior to April 12, 1902, Edward B. Perrin and the Aztec Land & Cattle Company, Limited, a corporation, each owned certain lands in fee simple in the territory of Arizona; that on that date those lands were included within the limits of the San Francisco Mountains Forest Reserves, and that thereafter, on February 2, 1904, under the provisions of the act of Congress of June 4, 1897 (30 Stat. 34, c. 2 [U. S. Comp. St. 1901, p. 1541]), the said landowners relinquished and conveyed to the United States their interest in said lands, and on February 8, 1904, they made lieu selections of certain public lands in Klamath county, Or., for the benefit of the complainant; that the selections were perfected by presenting the recorded deeds, together with a full, true, and correct abstract of title showing that the selectors were the owners in fee simple of the lands relinquished; that on or about June 28, 1902, the state of Oregon had filed upon the lands so selected certain instruments purporting to be school indemnity lists, and before the approval of the lists had sold the lands to the complainant, but that thereafter, owing to the invalid character of the base lands tendered in said lists, the lists were held for cancellation, and in March and August, 1904, were finally canceled, and relinquishments of said lists were filed on behalf of the state of Oregon; that prior to such cancellation the state of Oregon, acting through the officers of the state land board, sold to various bona fide purchasers for value the timber lands upon which the said school indemnity lists had been filed, and that the appellant in good faith purchased the said lands from the state of Oregon; that thereafter, discovering that the state had no right, title, or interest in said lands so conveyed, the forest lieu selections already referred to were made for the purpose of protecting complainant's interest in said lands; that at the time of making their selections the selectors filed with their selections relinquishments from the state of Oregon of any rights which it might have acquired by virtue of the school indemnity lists so filed by it; that after making such lieu selections and filing such relinquishments the officers of the land office at Lakeview, Or., having allowed other entries to be made upon the lands so selected by homestead, timber, and stone applications for the lands, rejected the selections so made by the complainant's predecessors in interest; that upon appeal to the Commissioner of the General Land Office the action of the register and receiver at Lakeview was affirmed; that the Commissioner advanced as a further reason for the rejection that, at the time when the lieu selections were presented at the local land office, the state indemnity school selections had not been canceled or relinquished; that the state of Oregon executed relinquishments and the same were filed in the land office, bearing the file mark of February 10, 1904; that the relinquishments were forwarded to the Commissioner of the General Land Office, and on March 7, 1904, he advised the register and receiver at Lakeview that the relinquishments had been received, and directed them to make due notation that the lists were canceled, "leaving the lands open to entry by the first legal applicants"; that thereafter the appellee made application for the land at the local land office, and his filing was accepted; that thereafter various proceedings were had in the Land Department, concerning the land so entered, and on August 10, 1907, the Secretary of the Interior instructed the Commissioner to order a hearing, that a full investigation might be had of the whole matter; that upon the hearing the local land office found that

the lands had been entered by bona fide settlers or purchasers, to many of whom certificates, and in some instances patents, had issued; that the register and receiver accordingly recommended that such entries be allowed to remain, and the Secretary of the Interior finally so decided on February 17, 1910, holding that the greater equities were with the homestead and stone and timber entrymen, and that in the discretion of the Secretary such entries might be protected against the right of the scrip applications, and said: "It matters not if Daniels' application was in all respects regular, and might have been allowed when presented; yet it was within the competency of the Land Department to dispose of the said lands to other persons, and, having done so, Daniels will not now be heard to question the correctness of that disposition."

Platt & Platt and Hugh Montgomery, all of Portland, Or., for appellant.

F. H. Mills, of Klamath Falls, Or., for appellees.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above.) The appellant contends that by virtue of his offer to select the lands in question, and the tender in exchange therefor of a deed and abstract of title to the lands offered for surrender, he thereby became the equitable owner of the lands so sought to be selected, notwithstanding that his selection was rejected by the officers of the local land office, and that their rejection was affirmed by the Secretary of the Interior, and that the patent having issued to the appellees, when in equity and good conscience, and according to law, it should have gone to the appellant, the court should convert the holder of the legal title into a trustee for the appellant, and compel conveyance of the legal title to him.

In considering in the light of the adjudications the question here presented, it is essential to bear in mind the distinction between the right acquired by a railroad company, under a congressional grant of lands to aid the construction of a railroad, to select within the indemnity limits lands in lieu of those which are lost in the place limits, and the right of a lieu land selector under the act of June 4, 1897. The former is a substantial right in the lands lying in the indemnity limits, given in consideration of the construction of a railroad, and is confined to specific lands within certain boundaries which are defined in the grant. It is a vested right, of which the grantee could not be deprived, by an act of Congress or by other authority. In Weyerhaeuser v. Hoyt, 219 U. S. 387, 31 Sup. Ct. 303, 55 L. Ed. 258, the court declared that it was the intention of Congress in making such a grant "to confer a substantial right to land within the indemnity limits in lieu of land lost within the place limits." The right of selection of lieu land given under the act of June 4, 1897, however, is in the first instance but an offer by the government to exchange lands. It is based upon no valuable consideration actually received. It attaches to no specific lands, nor to lands within any defined limits. It does not attach upon the mere presentation of the requisite papers. It attaches only when the authorized officers of

the government accept the offer to exchange. Nor is it true that the filing of the lieu selection papers and the acceptance of the same by the local land office segregates the land upon which the filing is made, so as to cut off intervening and subsequent rights as against the lieu selectors. In Roughton v. Knight, 219 U. S. 537–547, 31 Sup. Ct. 297, 299 (55 L. Ed. 326), in construing the act of June 4, 1897, the court said:

"Manifestly there must be an acceptance of the relinquishment by some one authorized to decide upon its sufficiency, and an assent to the particular selection made in lieu."

In Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 310, 23 Sup. Ct. 697, 47 L. Ed. 1064, lieu land had been selected under the act of June 4, 1897. The selector complied with the provisions of the act. His selection was received and accepted, and entered on the records of the local land office. At that time there was no adverse claim. Before the issuance of a patent, the selector's grantee brought a suit against the defendants, who had entered the land as a mineral claim; he claiming that his grantor had become vested with the complete equitable title to the land so selected, and had become entitled to receive a patent. The court held that it had no jurisdiction, prior to the issuance of the patent, to determine who was entitled to receive it, and that under the act of June 4, 1897, the officers of the local land office had no authority to decide whether the selector had complied with the provisions of the act; that authority being vested in the Commissioner of the General Land Office. The court said:

"But even the complete equitable title asserted by a complainant must, as it would seem, be based upon the alleged right of the local land officers to accept the deed and approve the selection, even though such approval may be thereafter the subject of a review in the nature of an appeal from the action of the local officers. There must be a decision made somewhere regarding the rights asserted by the selector of land under the act, before a complete equitable title to the land can exist. The mere filing of papers cannot create such title. The application must comply with and conform to the statute, and the selector cannot decide the question for himself. We do not see how it can be successfully maintained that without any decision by any official representing the government, and by merely filing the deed relinquishing to the government a tract of forest reserve land, and assuming to select a similar area of vacant land open to settlement, the selector has thereby acquired a complete equitable title to the selected land."

It is urged that this language of the court is dictum, but we do not so regard it. It contains the reasoning of the court in determining the nature of the rights of the complainant in that case. But if, indeed, it is true that the expression of such views was unnecessary to the determination of the case which was before the court, the language used sets forth the mature and unanimous judgment of the members of that court on the question of law which is involved in the case at bar, and we deem it controlling in the decision of the present case.

Nor do we find ground to sustain the appellant's contention that the views of the court so expressed in the Cosmos Exploration Co. Case have been modified by the decision in Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. Ed. 258. That was a case which

involved the right of a railroad company to select lands within the indemnity limits of its grant. The court held that selections of lieu lands filed with the Secretary of the Interior excluded the right of others to appropriate the lands embraced therein pending action by the Secretary, and that the railroad company's rights to such lieu lands so selected were superior to those of a purchaser under the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]) who filed pending final decision by the Secretary, and that the final decision by the Secretary related back to the date of the original selections. Prior to that time, the court had said, in New Orleans Pacific Ry. Co. v. Parker, 143 U. S. 57, 12 Sup. Ct. 369, 36 L. Ed. 66:

"As to lands within the indemnity limits, it has always been held that no title is acquired until the specific parcels have been selected by the grantee and approved by the Secretary of the Interior."

The same was held in Humbird v. Avery, 195 U. S. 507, 25 Sup. Ct. 123, 49 L. Ed. 286. In Wisconsin Central Ry. Co. v. Price County, 133 U. S. 496, 512, 10 Sup. Ct. 341, 347 (33 L. Ed. 687), the court said:

"Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose; and the indemnity lands remained unaffected in their title."

And in Sjoli v. Dreschel, 199 U. S. 565, 26 Sup. Ct. 155, 50 L. Ed. 311, the court held it to be established doctrine:

"That no rights to lands within indemnity limits will attach in favor of the railroad company until after selections made by it with the approval of the Secretary of the Interior; that, up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the preëmption and homestead laws of the United States; and that the Secretary of the Interior has no authority to withdraw from sale or settlement lands that are within indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits of the company's road."

In the Weyerhaeuser Case, the court distinguished the Sjoli Case by saying that it belonged to a class of cases in which there was no question of right by relation involved, and that the general language which we have quoted from the opinion was to be considered in view of the questions which were presented in that case, and that to apply it in the Weyerhaeuser Case would be in effect to destroy the indemnity provisions of the granting act. No reference was made to the decision in the Cosmos Exploration Company Case, and this was evidently for the reason that the language of the court in that case was deemed to be applicable solely to the right of selection granted by the act of June 4, 1897, and that the court recognized and intended to reaffirm the vital distinction which it had found between such rights and the rights of a selector of indemnity lands under a grant to a railway company in aid of the construction of its road. Stalker v. Oregon Short Line, 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027, is in line with Weyerhaeuser v. Hoyt, and so is Svor v. Morris, 227 U. S. 524, 33 Sup. Ct. 385, 57 L. Ed. ——. We consider the decision

in the Cosmos Exploration Company Case authority for sustaining the decree of the court below. But there is additional ground for sustaining it in the fact that, at the time when the appellant's selection was initiated on February 8, 1904, the lands involved herein appeared upon the records of the local land office as selected by the state of Oregon by certain school indemnity lists, and that those lists were not relinquished by the state until February 10, 1904. This sufficiently appears from the decision of the Secretary of the Interior which is made an exhibit to the bill and is controlling in so far as it varies from the allegations of the bill. Greenameyer v. Coate, 212 U. S. 434, 443, 29 Sup. Ct. 345, 53 L. Ed. 587.

The decree in each of the 16 suits, Nos. 2,212 to 2,227, is affirmed.