CAMERON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

No. 3001.

1. MINES AND MINERALS ⊕══41—LAND DEPARTMENT—DECISIONS OF.

Under Rev. St. § 2325 (Comp. St. 1916, § 4622), a decision of the Secretary of the Interior that no discovery had been made that the land was not mineral in character is conclusive, regardless of whether the Secretary was authorized to cancel a lode mining location on that ground.

2. MINES AND MINERALS ⊕══45—LAND DEPARTMENT—JURISDICTION.

The Land Department, of which the Secretary of the Interior is the head, has jurisdiction, on an application for a patent on a mining location, to cancel the location, having found that the land was not mineral in character, and that no discovery had been made, etc.

3. COURTS ⊕══92—PRECEDENTS—DICTUM.

An expression of the views of the Supreme Court setting forth the mature and unanimous opinion of the members of the court on a question of law involved in a case at bar, should be followed, and should not be rejected by an inferior national court as dictum.

Appeal from the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Suit by the United States against Ralph H. Cameron and others. From a decree for the United States, defendants appeal. Affirmed.

The court below entered a decree against the appellants (defendants there), among other things enjoining them from occupying, using, or asserting any claim to, or from engaging in business of any kind upon, or from interfering in any manner with, the administration or use by the government (complainant in the case), its officers, agents, or permittees, of a certain piece of land specifically described in the bill, excepting that portion thereof comprising the station grounds of the Grand Cañon Railway Company, which piece of ground is alleged in the bill to be the same as that "embraced within the so-called Cape Horn lode mining claim, location notice of which is of record in the office of the county recorder of Coconino county, Ariz., in Book 4 of Mines, at page 106, an amended location notice whereof is recorded in Book 5 of Mines, at page 363, in said office," and from making any excavations in that ground, and requiring the appellants to remove therefrom within a specified time all deposits of filth and refuse and all buildings and structures, with certain exceptions and provisos not necessary to be stated.

The bill alleged, among other things, the ownership of the ground by the complainant, and that it, with other lands, was on February 20, 1893, withdrawn and set apart as the Grand Cañon Forest Reserve by the proclamation of the President issued pursuant to the act of Congress approved March 3, 1891 (26 Stat. 1095, c. 561), which lands have been at all times since the said date part and parcel of a national forest of the United States, and are now a part and parcel of the Tusayan National Forest established by proclamation of the President June 28, 1910, issued pursuant to the said act of Congress and of the act approved June 4, 1897 (30 Stat. 11, c. 2); that the aforesaid lands of the government, with the exception of a strip about 75 feet in width along the southern boundary thereof, were, with other lands, further withdrawn January 11, 1908, and set apart by proclamation of the

⊕══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

President issued pursuant to the act of Congress approved June 8, 1906 (34 Stat. 225, c. 3060 [Comp. St. 1916, §§ 5278–5281]), as the Grand Cañon National Monument, for the protection of the Grand Cañon of the Colorado river, which lands have been at all times since January 11, 1908, and are now, a part and parcel of the said Grand Cañon National Monument; that the Grand Cañon of the Colorado river is an object of great scientific and scenic interest, and is visited by many thousands of persons each year, and that the said lands, by reason of their location upon and along the south rim of the cañon and immediately west of and adjacent to the railroad terminal and the principal hotel buildings, and by reason of the fact that they inclose the head of Bright Angel trail, the principal means of access by the public to the bottom of said cañon constitute a very important part of the Grand Cañon National Monument, and of right should be open to the free access at all times by the public and to the unhampered administration by the officers and agents of the government for the protection and accommodation of the large number of persons desirous of viewing the wonderful scenery there.

The bill further alleged, among other things, that on April 10, 1902, the defendant Ralph H. Cameron, in pretended compliance with the mining laws of the United States, located the said specifically described piece of ground of the government as the Cape Horn lode mining claim, and on February 23, 1904, made an amended location thereof, and on May 17, 1905, filed with the register and receiver of the United States land office then at Prescott, Ariz., his application under the mining laws of the United States for a patent for the said alleged Cape Horn lode mining claim, embracing the said specifically described piece of land, and that after due and proper notice to the said Cameron a hearing was had, at which he appeared and introduced evidence in support of his alleged claim and his application for a patent thereto, and that thereafter, and on February 11, 1909, the Secretary of the Interior, after full consideration of the evidence taken at such hearing, held that no discovery of mineral had been made within the boundaries of the said alleged Cape Horn lode mining claim, and that the land embraced therein is not mineral in character, and rejected the said application for patent, and held the said mining location to be null and void, and that the said piece of ground was a part and parcel of the said Grand Cañon National Monument; that thereafter, and on November 29, 1911, the First Assistant Secretary of the Interior denied a motion for review of the decision of February 11, 1909, and that on April 3, 1912, the General Land Office declared the decision of the Secretary of the Interior of February 11, 1909, to be final, and finally annulled the location of the said Cape Horn lode mining claim, and declared the land covered thereby to be a part of the aforesaid Grand Cañon National Monument; that subsequently, and on July 28, 1914, the said Cameron, in an attempt to reopen the matters and questions theretofore finally determined in the said proceedings before the Interior Department, filed with the register and receiver of the United States land office at Phœnix, Ariz., a second application under the mining laws of the United States for a patent for the said Cape Horn lode mining claim, and that thereafter, on August 4, 1915, the Secretary of the Interior held that by reason of the previous decisions of the Interior Department that have been mentioned the said Cape Horn lode mining claim had no legal existence, and finally denied the said second application for patent therefor; that, notwithstanding the aforesaid proceedings in and decisions of the Department of the Interior, the said defendant Ralph H. Cameron has continued to assert a right to the exclusive use and occupancy of the ground included within the said mining claim, thereby preventing the government, its officers and agents, from constructing on the said land improvements such as walks, railings, seats, etc., which are greatly needed for the convenience and protection of the public, and by reason of suits instituted, and threats made, and violence offered by the said named defendant and others of the defendants to the suit, persons holding or desirous of securing permits from the government to occupy and use, in conformity with the rules and regulations governing such use and occupancy, have been prevented from going on or occupying the said land and have been forcibly ejected therefrom; that the said defendants have constructed on said land of the government, and on and near

the said rim of the cañon numerous buildings within the said Tusayan National Forest, and with the exception of two of the buildings occupied by the defendant B. A. Cameron all of them are within the Grand Cañon Forest Reserve; that some of the buildings were constructed by the defendants B. A. Cameron, L. L. Ferrall, and S. D. Pepin subsequent to and notwithstanding the aforesaid decisions of the Department of the Interior, and that in the said buildings the said defendants have been and still are conducting livery and other business enterprises, and have permitted to accumulate around them and on and near the rim of the cañon large deposits of stable manure, garbage, and other refuse, to the great annoyance and discomfort of the public visiting the cañon, and thereby greatly detracting from the scenic beauties thereof.

The court having denied a motion made by the defendants for the dismissal of the bill on the ground that the matters therein alleged did not constitute any ground for equitable relief and that the defendants were entitled to a trial on the law side of the court, the defendants filed an answer, denying the alleged ownership of the complainant and alleging that the defendant Ralph H. Cameron duly located the ground in controversy as the Cape Horn lode mining claim on the 10th of April, 1902, within the boundaries of which he made a discovery of mineral, and admitted his subsequent application to the government for a patent to the ground, against which protest was made, and that a hearing thereof was had at which the said Cameron appeared and introduced evidence to sustain his application, and admitted the various decisions against him by the officers of the Department of the Interior, but alleged that the said decisions were without the jurisdiction of the officers, and were null and void, and as a separate defense alleged that he had lawfully located the ground and prior and subsequent to such location had made lawful discovery of mineral therein and had performed the annual assessment work thereon to and including the year 1915, and had complied with all of the laws relating thereto in every particular, and that the government claimed some right adverse to his alleged title, which he prayed to be adjudicated and that he be declared to be the owner of and entitled to the possession of the said ground by virtue of his said mining claim, to which separate defense the government interposed no plea.

On the trial the defendants offered the testimony of certain witnesses taken in a certain case entitled Cameron v. Bass in the superior court of Coconino county, Ariz., for the purpose of sustaining the allegations of their answer, objections to which, according to the stipulation of counsel, were made on the ground that the court was concluded by the decisions of the Department of the Interior denying the said application and annulling the said mining location, which objections were sustained by the court and the decree appealed from thereupon rendered.

Robert E. Morrison, of Prescott, Ariz., and J. E. Morrison, of Phœnix, Ariz., for appellants.

Thomas A. Flynn, U. S. Atty., of Phœnix, Ariz., Gerald Jones, Asst. U. S. Atty., of Tucson, Ariz., J. O. Seth, Asst. Sol. Department of Agriculture and Sp. Asst. U. S. Atty., of Santa Fé, N. M., and Morton M. Cheney, Asst. Sol. Department of Agriculture, of Albuquerque, N. M., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] In effect, the contention here made on behalf of the appellants is that the Secretary of the Interior was without authority to find as a fact that the locator of the alleged mining ground never made any discovery of mineral therein, and that the ground was not mineral land, nor any authority to cancel or hold void a lode mining location or claim, and

250 F.—60

that therefore the defendants to the action were entitled to introduce testimony in the court below to show that the ground in controversy is mineral land and was properly located by the appellant Ralph H. Cameron, and further that the defendants were entitled to a jury trial upon the question of title to the ground in question.

The argument of counsel is that while the Land Department, of which the Secretary of the Interior is the head (Rev. Stats. §§ 441, 453, 2478 [Comp. St. 1916, §§ 681, 699, 5120]), had authority to grant or reject the application of the locator of the mining claim for a patent, it had no—

"authority whatsoever to destroy or in any way interfere with the separate, distinct, and independent title already held by the locator under his location, or to determine whether or not the locator had performed the acts necessary to constitute a valid location. A title being claimed in good faith, the courts, and not the Secretary or Land Department, have the exclusive right, power, and jurisdiction to determine whether such title exists or not."

We think there is no merit in any of the contentions referred to, or in the argument made in support of them. The application here in question was made under and in pursuance of the provisions of section 2325 of the Revised Statutes (Comp. St. 1916, § 4622). No adverse claim on the part of any other mineral claimant, authorized by section 2326 of the same statutes (Comp. St. 1916, § 4623), was, so far as appears, interposed. But on the hearing of Cameron's application much testimony on the part of the claimant, as well as on the part of the government, appears to have been given before the officers of the Land Department respecting the character of the land applied for, and its location, some of it of a conflicting nature, the decision of which questions was not only within the jurisdiction of the Land Department, but within its exclusive determination. It is altogether too late to contend to the contrary, for nothing is better settled than that the facts in respect to the character of public land applied for under the laws authorizing its disposition, as well as the facts in respect to the performance of the acts required by the law to be performed by the applicant, are for the exclusive determination of the Land Department. Very many decisions of the Supreme and other federal courts to that effect might readily be cited, but we think it needless to do so. And even though it be conceded that the Land Department was without jurisdiction to order, as it did in the instant case, the cancellation of the applicant's mining location, yet its determination of the fact that the ground applied for was not mineral land in effect cut up by the roots every step taken by the applicant under the mining laws, necessarily including his mining location; and such was the decision of the Supreme Court of Arizona in the case of Cameron v. Bass, 168 Pac. 645, regarding, in part, the very ground here in controversy.

[2, 3] But in the case of Clipper Mining Co. v. Eli Mining & Land Co., 194 U. S. 220, 223, 24 Sup. Ct. 632, 48 L. Ed. 944, the Supreme Court expressly declared that the Land Department has the power to set aside a mining location and restore the ground to the public domain—saying (194 U. S. on page 223, 24 Sup. Ct. on page 633 [48 L. Ed. 944]):

" 'The judgment of the department in the Searl placer case went only to the extent of rejecting the application for patent. The department did not assume to declare the location of the placer void, as contended by counsel, nor did the judgment affect the possessory rights of the contestant to it.' 22 L. D. 527. So far as the record shows—and the record does not purport to contain all the evidence—the placer location is still recognized in the department as a valid location. Such, also, was the finding of the court, and, being so, there is nothing to prevent a subsequent application for a patent and further testimony to show the claimant's right to one. Undoubtedly, when the department rejected the application for a patent, it could have gone further and set aside the placer location, and it can now, by direct proceedings upon notice, set it aside and restore the land to the public domain."

It is contended by counsel for the appellants that what was there said by the court was mere dictum. We do not so understand it; but, even so, this court observed regarding a like contention in the case of Daniels v. Wagner, 205 Fed. 238, 125 C. C. A. 93:

"It is urged that this language of the court is dictum, but we do not so regard it. It contains the reasoning of the court in determining the nature of the rights of the complainant in that case. But if, indeed, it is true that the expression of such views was unnecessary to the determination of the case which was before the court, the language used sets forth the mature and unanimous judgment of the members of that court on the question of law which is involved in the case at bar, and we deem it controlling in the decision of the present case."

The judgment is affirmed.