[S. F. No. 17862. In Bank. Feb. 17, 1950.]

EL DORADO OIL WORKS (a Corporation), Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Williamson & Wallace and W. F. Williamson for Appellant.

Swarts, Tannenbaum, Ziffren & Steinberg, Jacob Shearer and Shirley Adelson Siegel as Amici Curiae on behalf of Appellant.

Fred N. Howser, Attorney General, and James E. Sabine, Deputy Attorney General, for Respondent.

SPENCE, J.—Plaintiff brought this action to recover the amounts assessed against it as additional franchise taxes by defendant, under authority of the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, as amended; Deering's Gen. Laws, 1931, Act 8488, p. 4763; 1933 Supp., p. 2329; 1935 Supp., p. 1929), for the taxable years 1935 and 1936, which taxes were based respectively upon income for the years 1934 and 1935, and were paid under protest. The trial court found in defendant's favor, and from the judgment accordingly entered, plaintiff appeals.

The sole point in controversy is the propriety of the reallocation formula used by defendant in computing plaintiff's franchise taxes for the two years involved. An examination of the record in the light of applicable legal principles compels the conclusion that the method of apportionment applied by defendant in determining the net income earned by plaintiff's unitary business for purposes of the state franchise tax may not be successfully challenged, and accordingly the judgment must be affirmed.

During the years 1934 and 1935 plaintiff, a California corporation, was principally engaged in the processing and sale of cocoanut oil and meal. Its manufacturing plant and all related facilities were located in this state. It purchased the bulk of its raw material, copra, in the Philippine Islands, where it maintained offices for that purpose. In the first four months of 1934, a portion of its required copra supply was obtained in the Dutch East Indies through a buying agency in which plaintiff owned a 40 per cent interest, but such purchasing practice was discontinued in May of that year. The Dutch East Indies agency operated independently in making purchases on behalf of plaintiff as one of its stockholders, and plaintiff never had any of its own employees performing services outside of this state in connection therewith. Plaintiff's products were sold to purchasers throughout the United States, with the shipping terms "f.o.b. cars at [its] plant in

California." It maintained no sales office or salesmen in any state other than California. Sales to customers out of the state were negotiated in the main through independent brokers—not employees of plaintiff—although occasionally such customers contacted plaintiff's local sales office directly by telephone or telegraph. Plaintiff's executive committee meeting in its local office passed upon all proposals relating to sales transactions. Plaintiff's only employees located out of the state were those engaged in its purchasing activities in the Philippine Islands. At the same time plaintiff also had certain employees within the state who performed limited buying services for it.

Plaintiff made and filed its tax returns for the two years mentioned and paid the taxes so reported, using as the basis for the returns, in computing the percentage of business done in California, the average which these five factors within the state—property, payroll, sales, purchases, and manufacturing costs—bore to the total of such factors within and without the state. On this basis plaintiff allocated to California for the respective two income years, 1934 and 1935, 63.6282 per cent and 59.0915 per cent of its total net income.

Defendant Tax Commissioner rejected the schedules and returns so filed by plaintiff and made a reallocation on the basis of a formula consisting only of these three factors—property, payroll, and sales. In making such reapportionment, defendant accepted plaintiff's figures for two factors, property and payroll, but assigned 100 per cent of plaintiff's gross sales to business done within the state in lieu of the apportionment figures of 38.5029 per cent and 22.2821 per cent of total sales submitted by plaintiff for the respective income years, 1934 and 1935, upon the basis that sales to customers out of the state were not allocable to California. Under such reallocation, plaintiff's net income from business done within the state was fixed at 89.8786 per cent for the income year 1934 and at 82.18 per cent for the income year 1935, and additional tax assessments were accordingly made by defendant. After taking an appeal to the State Board of Equalization, which sustained defendant in his reallocation formula, plaintiff paid under protest the additional assessments with interest and then brought this action to recover such amounts.

As above indicated, the protested taxes were levied under authority of the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, as amended; Deering's Gen. Laws, Act 8488), hereinafter referred to as the act. Section 4 provided

that a corporation doing business within the limits of the state, and not expressly exempted from taxation, shall annually pay, for the privilege of exercising its corporate franchise in the state, a tax measured by 4 per cent of its net income earned during the preceding fiscal or calendar year, the minimum tax being $25. As in effect during the period here involved, section 10 provided that if the entire business of the corporation is not done within the state, the ''tax shall be according to or measured by that portion thereof which is derived from business done within this State . . . determined by an allocation upon the basis of sales, purchases, expenses of manufacturer, pay roll, value and situs of tangible property, or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State and to avoid subjecting the taxpayer to double taxation.''

Plaintiff concedes that income from business done within the state may properly include income from interstate and foreign commerce to the extent that such is done within the state, as well as income from purely intrastate business (*Matson Nav. Co.* v. *State Bd. of Equalization,* 3 Cal.2d 1 [43 P.2d 805], aff. 297 U.S. 441 [56 S.Ct. 553, 80 L.Ed. 791]; *United States Glue Co.* v. *Oak Creek,* 247 U.S. 321 [38 S.Ct. 499, 62 L.Ed. 1135]; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 [41 S.Ct. 45, 65 L.Ed. 165]; *Southern Pacific Co.* v. *McColgan,* 68 Cal.App.2d 48, 61 [156 P.2d 81]), and that during the period here involved it was engaged in a unitary business within and without the state so as to be subject to an allocation method of taxation in the assessment of the franchise tax (*Butler Brothers* v. *McColgan,* 17 Cal.2d 664 [111 P.2d 334], aff. 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991]). The only question is whether defendant may be sustained in his reallocation of plaintiff's net income for franchise tax purposes.

As the disputed issue is so narrowed, plaintiff and amicus curiae argue that the Legislature designated in the terms of the act *five* factors for use in the allocation formula as a standard yardstick for determining that portion of a unitary business taxable within the state; that the statutory authority to use an alternative formula contemplates only a situation where the five-factor formula would not truly reflect the income-producing elements of the unitary business, and to that

limited extent the Franchise Tax Commissioner may exercise his discretion in the choice of a formula; and that since the five designated factors were all applicable to plaintiff's business, it was improper to substitute another formula for the computation of its franchise tax—and in particular, excluding as a separate factor plaintiff's purchase transactions in the consideration of its business activities, an omission which allegedly threw the entire reallocation formula off balance in reflecting plaintiff's overall business operations. Plaintiff also objects to defendant's "arbitrary" assignment of 100 per cent of its gross sales to within-the-state business, claiming that such treatment did not take into account its undisputed method of transacting sales without the state. Accordingly, plaintiff and amicus curiae contend that defendant's reallocation formula, in its application to plaintiff's unitary business, attributed to California a percentage of income out of proportion to the business done within the state and so violated the due process and equal protection of the law clauses of the Fourteenth Amendment of the federal Constitution.

On the other hand, defendant urges that the three-factor formula he adopted in reallocating plaintiff's net income earned in its unitary business is recognized as a reasonable method of apportionment (*Butler Brothers* v. *McColgan, supra,* 17 Cal.2d 664, 677, aff. 315 U.S. 501, 509 [62 S.Ct. 701, 86 L.Ed. 991]; *Edison California Stores, Inc.* v. *McColgan,* 30 Cal.2d 472, 479 [183 P.2d 16]) and is most frequently used throughout the states in working out allocation problems (Silverstein, *Problems of Apportionment in Taxation of Multistate Business,* 4 Tax L.Rev. [1949], 207, 258; Altman and Keesling, Allocation of Income in State Taxation [1946], pp. 37, 107-108); that the act authorizes the exercise of discretion in the adoption of an allocation formula deemed appropriate to the tax problem at hand in determining the income derived from business done within the state; and that his reallocation formula based upon *three* rather than five factors, omitting as an independent item plaintiff's purchase transactions and reassigning the sales' values attributable to California activities, fairly apportioned plaintiff's income within and without the state and so is free from constitutional objection. We have concluded that the trial court properly found in accordance with defendant's views, consistent with his statutory power and the reasonableness of his procedure.

■ The fact that defendant's reallocation formula was based on only three of the five factors specified in section 10

of the act did not constitute a violation thereof, for under its express provisions the "commissioner is authorized to determine the net income derived from business done within this state by an allocation upon those specified factors, 'or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State . . .' " (*Pacific Fruit Express Co.* v. *McColgan*, 67 Cal.App.2d 93, 104-105 [153 P.2d 607].) While in the cited case the particular nature of the taxpayer's unitary business required special treatment and a three-factor formula consisting of property, payroll, and mileage (the latter item in lieu of sales) was deemed applicable, the wording of the section does not indicate that the commissioner's power to adopt a formula is restricted to such limited factual situation, in which the general formula mentioned in the section would be inappropriate as a tax base in the measure of the taxpayer's business activities. On the contrary, the broad language of the section indicates that the factors therein designated are suggestive, but not mandatory or exclusive, and that the commissioner is empowered in his discretion to choose such tax base for his formula allocation as will carry out the act's purpose to achieve a proper apportionment of business done within and without the state, and at the same time avoid double taxation.

Nor does the Legislature's grant of such authority to the commissioner consistent with the flexible administration of the act constitute an unlawful delegation of power and render the act unconstitutional in that respect. So pertinent is the precise wording of the governing constitutional provision pursuant to which the act was adopted in 1929 (art. XIII, § 16, subd. (5)), stating that "the legislature shall *define* 'corporations' . . . shall *define* 'net income' [but] *shall provide for the allocation of income* . . ." (Emphasis added.) Had it been the intent that the Legislature should make the specific allocation, it would seem that the constitutional provision would have read "shall allocate" rather than "shall provide for the allocation of" income. Accordingly, in delegating to the commissioner the power of determining the formula to be used in apportioning the net income earned from business done within and without the state, the Legislature has "provided for" the allocation of income within the meaning of

the constitutional provision. (*Pacific Fruit Express Co.* v. *McColgan, supra,* 67 Cal.App.2d 93, 101-102.) Moreover, it has been held under similar provisions of the Constitution (art. XIII, § 14, subd. (d), authorizing the imposition of the old corporation franchise tax) that the Legislature need not prescribe the exact method by which the tax is to be fixed, but "may delegate to its taxing officers the power to adopt a suitable method." (*Utah Construction Co.* v. *Richardson,* 187 Cal. 649, 652 [203 P. 401].) The essential requirement is the Legislature's specification of a standard—"an intelligible principle to which the person or body authorized to [administer the act] is directed to conform" (*Hampton & Co.* v. *United States,* 276 U.S. 394, 409 [48 S.Ct. 348, 72 L.Ed. 624])—but it may leave to the administrative agency the precise determination necessary to bring the standard into operation. Section 10 complies with this principle in "calling for a method of allocation which is 'fairly calculated' to assign to California that portion of the net income 'reasonably attributable' to the business done there." (*Butler Brothers* v. *McColgan, supra,* 315 U.S. 501, 506.)

The three-factor formula of property, payroll, and sales here applied by defendant in the apportionment of plaintiff's unitary business within and without the state has been recognized as sufficiently diversified to "reflect 'the relative contribution of [out-of-state] activities . . . to the production of the total unitary income,' so as to allocate to California its just proportion of the profits earned . . . from [a] unitary business" (*Butler Brothers* v. *McColgan, supra,* 315 U.S. 501, 509), and its "fairness" has been declared "settled" (*Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472, 479), consistent with practical administrative difficulties that necessarily arise in fixing upon a workable formula for general application (*cf., Butler Brothers* v. *McColgan, supra,* 17 Cal.2d 664, 677). Although the principal issue in these cited cases was whether the taxpayer's business activities within and without the state were such as to render the formula allocation rather than a separate accounting method appropriate for the admeasurement of the franchise tax, nevertheless in resolving such controversial point the fairness and reasonableness of the specific three-factor formula here in question was a necessary consideration in sustaining the propriety of the commissioner's tax assessment upon the apportioned tax base. (*Gwinn* v. *Hamilton,* 75 Cal. 265, 266 [17

P. 212]; *Cameron* v. *United States*, 250 F. 943, 947 [163 C.C.A. 193].)

█ Plaintiff argues the import of an official order addressed to it from defendant's office in 1933, directing it to use the five-factor formula in the allocation of its income for franchise tax purposes, but such directive would not estop defendant from adopting another formula for the measurement of the tax in conformity with the standard established by the statute. (*California Emp. Com.* v. *Black-Foxe M. Inst.*, 43 Cal.App.2d Supp. 868, 876 [110 P.2d 729].) One of defendant's auditors testified at the trial that in the years following 1933 it was the "Commissioner's practice to use the three factor formula generally," and in line therewith the record shows that for the taxable year immediately preceding the years here involved, that is 1934, plaintiff was advised by defendant that its allocation would be made on the three-factor tax base. Such long-continued practice in the handling of thousands of allocation problems since the cited year 1933 was presumably within the knowledge of the Legislature and yet it made no modification in section 10 of the act which would require a different construction as to defendant's authority thereunder (Stats. 1935, p. 965; Stats. 1939, p. 2944) —a strong factor indicating that the administrative practice was consistent with the Legislature's intent relative to the commissioner's power in carrying out the allocation principle of the section. (*Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 922 [156 P.2d 1], and cases cited; *People* v. *Universal Film Exchange, ante,* p. 649 [213 P.2d 697]; see, also, *White* v. *Winchester Country Club,* 315 U.S. 32, 41 [62 S.Ct. 425, 86 L.Ed. 619].) As section 10 is so construed, it necessarily must be concluded that defendant's application of the three-factor formula as a preferred general practice is not open to objection as an unauthorized exercise of power so long as it produces the desired proportionate result directed by the statute and at the same time avoids subjecting the taxpayer to double taxation. To this latter point it need only be said here that it is undisputed that plaintiff, on the basis of its business activities during the years involved in this case, "paid [no] taxes in any state other than California." (*Cf., Southern Pacific Co.* v. *McColgan, supra,* 68 Cal.App.2d 48, 52-53.)

█ There now remains for consideration the constitutional challenge to defendant's reallocation of plaintiff's net

income upon the claim that such procedure produced an arbitrary assessment in unreasonably assigning to California taxable values not attributable to business done within the state. As above noted, defendant's reallocation formula embraced only three of the factors mentioned in the statute—property, payroll, and sales—and omitted the other two—purchases and expenses of manufacture. Complaint is made only as to the first-mentioned omission—purchases. In this regard reference is made to the testimony of plaintiff's secretary that the "company's profits came from three primary sources: purchase of raw material, manufacturing, and sales," and that the favorable buying of copra in the Philippine Islands did "definitely increase the profit; a decrease of cost increases profit." Accordingly, it is argued that defendant's reallocation formula, excluding plaintiff's "foreign purchases" as a separate factor, did not result in a proper apportionment of plaintiff's unitary business but rather denied plaintiff the benefit of a saving it effected through an income-producing activity without the state—an "exclusion [which] worked to decrease the out-of-state profits and increase the within state profits or income for taxation purposes." But conceding that plaintiff's "foreign purchases" contributed to the profits of its overall business, it does not appear that defendant, though excluding such item as an independent factor in the reallocation formula, failed to take it into account in the apportionment of plaintiff's activities within and without the state. Thus, in the *payroll* factor allowance was made for compensation paid to plaintiff's employees who were engaged in purchasing activities in the Philippine Islands, and in the *property* factor the value of the foreign purchases of copra awaiting shipment or en route to plaintiff's manufacturing plant in the state was taken into account upon the estimate of plaintiff's total property holdings within and without the state, in the proportionate evaluation of plaintiff's integrated business. While it may be that such consideration was not equivalent to separate identification of the purchase item in the tax base, nevertheless it cannot be denied that the three-factor reallocation formula in its application to plaintiff's business for the determination of its franchise tax represented an honest effort on the part of defendant "to reach only the profits earned within the state" (*Underwood Typewriter Co.* v. *Chamberlain, supra,* 254 U.S. 113, 121) and reflected with reasonable fairness a proper balance of plaintiff's respective activities in their relative contribution to plaintiff's total income (*Matson*

*Nav. Co.* v. *State Bd. of Equalization, supra,* 3 Cal.2d 1, 8).

No method of allocation can precisely determine the exact amount of income attributable either to any given geographic area or to any given part of a series of business transactions culminating in the realization of a profit, and "any effort" in that regard "must be more or less arbitrary and fictitious" (*Gorham Mfg. Co.* v. *Travis,* 274 F. 975, 978) as a matter of practical tax administration. In short, as was recently said by the Supreme Court of the United States in sustaining the validity of a franchise tax assessment, the "practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities . . . [makes] 'rough approximation rather than precision' . . . sufficient" in the formula allocation of income from a unitary business. (*International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 [67 S.Ct. 444, 91 L.Ed. 390].) Within this principle, plaintiff's "foreign purchases" received reasonable consideration in defendant's apportionment of plaintiff's net income on the three-factor tax base.

■ Nor is there merit in plaintiff's constitutional objection to defendant's reallocation formula because of its assignment of 100 per cent of plaintiff's sales to California, contrary to plaintiff's contention that only its sales to California customers were so classifiable. It appears that plaintiff's out-of-state sales generally followed this pattern: the sales contract would be prepared by an independent broker, usually in Chicago, where "the principal brokers trading in [cocoanut oil and meal] held their offices"; copies of the contract would be simultaneously transmitted to plaintiff and to the buyer for signature—with plaintiff as seller executing one copy first, then returning it to the broker, who thereupon "passed [it] to the buyer for" signing, which would be "done out of state," and "so signed," the "copy came back to [plaintiff] . . . from the buyer direct or through the broker usually through the [latter channel]"; shipment would then be made on the buyer's request over routes mutually agreeable f.o.b. California; the bill of lading would be drawn to plaintiff's order endorsed by plaintiff and sent with a sight draft through plaintiff's bank to the correspondent bank in the city where the buyer was located; the buyer "would pay the draft, take up the bill of lading and take delivery" of the shipment upon arrival. As above stated, plaintiff did not have any sales office outside of California and had "no . . . employees out-

side of the state who made . . . sales''; and all ''proposals for sales'' received from out-of-state brokers, or otherwise, were ''canvassed'' and ''acted upon'' at ''daily'' meetings held by plaintiff's ''executive committee'' in its California office. One of defendant's auditors testified at the trial that it had been ''the practice of the Franchise Tax Commissioner, since at least 1930 . . ., in [the] case of a corporation manufacturing goods in California which has no employees engaged in sales activities outside of California to treat the sales of that corporation as California sales regardless of whether title to the goods was transferred outside of the state of California or within the state.''

 Plaintiff maintains that such sales were not properly allocable to California because consummated without the state —the contract was signed by the buyer without the state, and payment and delivery took place without the state. But disregarding the argument that ''the property in the goods'' sold by plaintiff ''passed to the buyer'' on delivery to the railroad carrier in California and the ''bill of lading'' was in form in favor of plaintiff ''only for the purpose of securing'' payment by the buyer in ''performance . . . of his obligations under the contract,'' so as to make such sale one in fact consummated in California (Civ. Code, § 1740, subd. (2) ; Uniform SalesAct), it must be remembered that the tax problem here in question concerns not a sales tax upon the transaction itself but a franchise tax assessment measured by plaintiff's net income derived from business done within this state. Accordingly, the focal point for consideration is the place where the activities of the corporation occurred which resulted in the sales. This precise matter was at issue in the case of *Irvine Co. v. McColgan,* 26 Cal.2d 160 [157 P.2d 847, 167 A.L.R. 934], where the plaintiff taxpayer, a foreign corporation authorized to do business within the state, sought an allocation of its net income for franchise tax purposes on the claim that it shipped a portion of its agricultural crop, all of which was grown in this state, ''directly to purchasers in other states upon orders obtained or sales made therein by independent produce brokers'' (p. 168)—a method of marketing which in its opinion constituted the transaction of business without the state. Plaintiff in that case admittedly had no employees outside the state and the proceeds from all its sales were received here. Accordingly this court, in rejecting plaintiff's theory as to its franchise tax liability for business done within this state, continued at page 168 : ''The argument

that plaintiff is entitled to an allocation because the latter sales partook of the nature of transactions in interstate commerce, is successfully countered by the argument that plaintiff's entire business was done within this state since *all of its activities giving rise to income from interstate sales were carried on in California.''* (Emphasis added.) A parallel situation exists here insofar as plaintiff's out-of-state sales are concerned, with ''all of *its* activities giving rise to income'' therefrom—its passing upon the sales in executive committee meeting, its signing of the contracts, its shipment of the product, and its receipt of the proceeds—''carried on in California.'' In such circumstances the place where the buyer signed the contract with plaintiff or took delivery of the shipment from the carrier (*International Harvester Co. v. Evatt, supra,* 329 U.S. 416) or where title to the goods passed (*Montag Bros. v. State Revenue Com.,* 50 Ga.App. 660 [179 S.E. 563], aff., 182 Ga. 568 [186 S.E. 558] ; *Trane Co. v. Wisconsin Tax Com.,* 235 Wis. 516 [292 N.W. 897] ; see *Irvine Co. v. McColgan, supra,* 26 Cal.2d 160, 168) is not necessarily determinative of the sales situs for the purpose of computing the sales factor in the application of a ''method of allocation . . . fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State'' (§ 10).

In assailing defendant's reallocation formula as producing a wholly disproportionate result in the measurement of its net income from business done within and without the state, plaintiff mainly relies on these two cases: *People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48 [129 N.E. 202], cert. den., 256 U.S. 702 [41 S.Ct. 624, 65 L.Ed. 1179] ; and *Hans Rees' Sons v. North Carolina,* 283 U.S. 123 [51 S.Ct. 385, 75 L.Ed. 879]. Both cases are readily distinguishable.

In the Portland Cement Company case the question was whether the tax commissioner could constitutionally include within an allocation formula income received by the taxpayer —a foreign corporation—from stocks and bonds having a situs without the state and in nowise connected with the conduct of its unitary business. It was held that he could not since such income was clearly segregable ''according to the situs of its origin'' and apart from the operations of the business, so that under constitutional limitations it was subject to tax only in that state where it had its source. (*Southern Pacific Co. v. McColgan, supra,* 68 Cal.App.2d 48, 57, 60.) Here, in con-

trast, the tax problem concerns only income derived from the conduct of a unitary business, and the necessary use of a formula arises because of the recognized "impossibility of allocating specifically the profits earned by the processes conducted within [the state's] borders." (*Underwood Typewriter Co.* v. *Chamberlain, supra,* 254 U.S. 113, 121.)

In the Hans Rees' case the formula method of allocating income earned by a unitary business was recognized as generally sound in application, but in that particular instance the formula employed, consisting of the single factor of property, failed to give proper weight to the extensive activities of the company without the state so that the result reached was unreasonable. There, by use of the formula, approximately 80 per cent of the entire income of the company, a foreign corporation, was allocated to the taxing state—"a percentage of income out of all appropriate proportion to the business transacted by the [company] in that state" (p. 135) in view of the company's evidence tending to show that for the years in question its average income having a source in its operations within the state was but 17 per cent, and in no event exceeded 21.7 per cent of its total business. Plaintiff here has made no such demonstration as to the unfairness of the result reached in the application of defendant's reallocation formula to its unitary business. (See *International Harvester Co.* v. *Evatt, supra,* 329 U.S. 416, 423.)

The "statute on its face carries [the] presumption of constitutionality which attaches to all legislative acts" (*Maxwell* v. *Kent-Coffey Mfg. Co.,* 204 N.C. 365 [168 S.E. 397, 402, 90 A.L.R. 476]) and "[t]o rebut the presumption that the formula produced a fair result, 'the burden is on the taxpayer to make oppression manifest by clear, cogent evidence' (*Norfolk & Western Ry. Co.* v. *North Carolina* (1936), 297 U.S. 682, 688 [56 S.Ct. 625, 80 L.Ed. 977]). . . . that more taxes have been exacted than in equity and good conscience should have been paid." (*Pacific Fruit Express Co.* v. *McColgan, supra,* 67 Cal.App.2d 93, 96.) As the record has been here analyzed in the light of plaintiff's contentions, defendant's reallocation formula based on the three-factor tax base—property, payroll, and sales—appears in its application to plaintiff's business, to have been an honest effort to apportion to California that part of plaintiff's net income fairly attributable to business done within this state, and to have given appropriate consideration to the various elements entering into the overall enterprise so as to be free from constitutional objection

on the ground that it operated to tax extraterritorial values in violation of the due process and equal protection of the law clauses of the Fourteenth Amendment. It therefore follows that defendant's additional franchise tax assessments against plaintiff for the two years in question must be sustained. (*Underwood Typewriter Co.* v. *Chamberlain, supra,* 254 U.S. 113; *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Com.,* 266 U.S. 271 [45 S.Ct. 82, 69 L.Ed. 282].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Schauer, J., concurred in the judgment.

Appellant's petition for a rehearing was denied March 16, 1950.