# CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* BACKUS.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 908.   Argued March 27, 28, 1894. — Decided May 26, 1894.

If an assessing board, seeking to assess for purposes of taxation a part of a railroad within a State, the other part of which is in an adjoining State, ascertains the value of the whole line as a single property and then determines the value of that within the State, upon the mileage basis, that is not a valuation of property outside of the State; and the assessing board, in order to keep within the limits of state jurisdiction, need not treat the part of the road within the State as an independent line, disconnected from the part without, and place upon that property only the value which can be given to it if operated separately from the balance of the road.

Where an assessing board is charged with the duty of valuing a certain number of miles of railroad within a State forming part of a line of road

running into another State, and assesses those miles of road at their actual cash value determined on a mileage basis, this does not place a burden upon interstate commerce, beyond the power of the State, simply because the value of that railroad as a whole is created partly — and perhaps largely — by the interstate commerce which it is doing.

THE case is stated in the opinion.

*Mr. John T. Dye* for plaintiff in error.

*Mr. Alonzo Greene Smith,* Attorney General of the State of Indiana, and *Mr. William A. Ketcham* for defendant in error. *Mr. Albert J. Beveridge* and *Mr. John W. Kern* were with them on their brief.

MR. JUSTICE BREWER delivered the opinion of the court.

This case is similar to the two just decided, in that it was a suit brought by this plaintiff in the same court, challenging an assessment of its railroad property for the same year, by the same board, with the same result both in the trial and Supreme Court of the State. Hence it is useless to reconsider the questions decided in those cases as to the constitutionality of the act itself, or those which depend solely upon like testimony. There was, however, in the trial of this case a more elaborate effort to show that the state board included in its assessment the value of property outside the State, and also that the valuation placed nominally upon the property within the State was largely based upon interstate business done by the plaintiff, and thus, as is claimed, to that extent, placed a direct burden upon interstate commerce, which, it is conceded, is beyond the power of the State to cast. It becomes necessary, therefore, to notice a little in detail the testimony which was received, as well as that which was excluded on the hearing.

It may be premised that there was much testimony of a character similar to that given in the other cases. Beyond that, there was a large amount of testimony received as well as some offered and rejected for the purpose of showing what was presented to the board for consideration, the method by

which it reached its conclusions, and the elements which entered into its estimate of value. The principal witness relied on in respect to these matters was the secretary of State, a member of the board. By him it was proved that no witness was sworn and examined, and no inquiry made in that way, as to the value of this property. It appeared that the return made by the company was before the board for consideration. The court ruled out an offer to prove that outside of such return no books, papers, or documents, except Poor's Manual and the Investors' Guide, were produced before the board, or considered by it in making the assessment; that Poor's Manual was used by it for data upon which to base the assessment; and specifically that this was the only evidence which it had as to the number of miles owned and leased by the plaintiff, the State in which they were located, and the various encumbrances upon the different lines of road included in the system belonging to the plaintiff. It was shown that the plaintiff appeared before the board by its officers, with such statements as they desired to make, and also that other individuals (especially an attorney representing Marion County, one of the counties through which the road of the plaintiff runs) appeared and made arguments. A series of questions was put to the witness, of which this is a sample:

" Q. In the assessment of the Cincinnati, La Fayette and Chicago Railway, extending from Templeton, Indiana, to the Illinois state line," (one of the lines in plaintiff's system and included in the assessment,) " in arriving at the basis for the estimate of the value which you placed upon the main line of that road, did you consider the market value of any stocks; and, if so, of what stocks did you consider the market value?"; but the court ruled the question out on the ground that it was an attempt to inquire into the mental processes of members of the board. At the time counsel for the defendant stated:

" We desire to let the record show at this point, may the court please, that the defendant will interpose no objection to any question asked by the plaintiff as to whether or not the state board of tax commissioners assessed and valued any

bonds, stocks, or anything else outside of the State, and that we will not object to any question asked any member of the state board of tax commissioners as to whether or not that board assessed anything else than railroad track and rolling stock inside of the State of Indiana."

The plaintiff did not, however, apparently care to take advantage of this offer. Other questions were put to the witness, like the following:

"Q. In assessing the Indianapolis and St. Louis Railroad, you placed the main track at $27,900 per mile, while you assessed the main track of the Terre Haute and Indianapolis Railroad at $21,800 per mile, being $6000 per mile less than the track of the St. Louis division of the three C.'s & St. L. or the I. & St. L. railroad. Now, in making this assessment, $21,800 per mile, or $27,900 per mile upon the main track of the St. Louis division of the three C.'s & St. L., did you or not consider the gross earnings of the three C.'s & St. L. railway, including earnings derived from carrying freight and passengers from points within to points without the State of Indiana, or through the State of Indiana, while engaged as a common carrier in interstate commerce?"; but the court sustained objections to all of them.

The witness was also asked, but not permitted to answer:

"Q. Did you fix the value upon the St. Louis division of the three C.'s & St. L. railway — I mean did the board — as returned to the auditor of State separately or did you value that road as a part of the three C.'s & St. L. system in Ohio and in Indiana, and did you, having reached a unit of value by considering the whole system, distribute that unit of value according to mileage over the operated and leased lines and parts of roads in Indiana of the plaintiff?"

Another series of questions was propounded, of which the following is one:

"Q. Did you or not, in assessing and fixing the value of the St. Louis division and of the Chicago division and of the leased and operated lines of the three C.'s & St. L. Railway in the State of Indiana, place or add anything to the value of said lines by reason of the fact that it had a franchise?"

Objections were made by the defendant to these questions, which were sustained, but afterwards, when the witness was again on the stand, the objections were withdrawn, whereupon the plaintiff withdrew all the questions except the one which we have last quoted, and to that the witness answered, "We did not; no, sir."

These references are probably sufficient to fully present the questions for consideration. It will not be claimed that it is within the province of this court to review any question as to the admission or rejection of testimony which does not bear directly upon some matter of a Federal nature. It will be noticed that no testimony was ruled out showing, or tending to show, what was in fact valued and assessed by the state board. There was also direct testimony that no franchise belonging to the plaintiff was estimated in making the assessment. The inquiry, therefore, in view of the testimony received and that offered and rejected is narrowed to these two matters: First. If an assessing board, seeking to assess for purposes of taxation a part of a road within a State, the other part of which is in an adjoining State, ascertains the value of the whole line as a single property and then determines the value of that within the State, upon the mileage basis, is that a valuation of property outside of the State, and must the assessing board, in order to keep within the limits of state jurisdiction, treat the part of the road within the State as an independent line, disconnected from the part without, and place upon that property only the value which can be given to it if operated separately from the balance of the road? Second. Where an assessing board is charged with the duty of valuing a certain number of miles of railroad within a State forming part of a line of road running into another State, and assesses those miles of road at their actual cash value determined on a mileage basis, is this placing a burden upon interstate commerce, beyond the power of the State, simply because the value of that railroad as a whole is created partly — and perhaps largely — by the interstate commerce which it is doing?

With regard to the first question, it is assumed that no special circumstances exist to distinguish between the condi-

tions in the two States, such as terminal facilities of enormous value in one and not in another. With this assumption the first question must be answered in the negative. The true value of a line of railroad is something more than an aggregation of the values of separate parts of it, operated separately. It is the aggregate of those values plus that arising from a connected operation of the whole, and each part of the road contributes not merely the value arising from its independent operation, but its mileage proportion of that flowing from a continuous and connected operation of the whole. This is no denial of the mathematical proposition that the whole is equal to the sum of all its parts, because there is a value created by and resulting from the combined operation of all its parts as one continuous line. This is something which does not exist, and cannot exist, until the combination is formed. A notable illustration of this was in the New York Central Railroad consolidation. Many years ago the distance between Albany and Buffalo was occupied by three or four companies, each operating its own line of road, and together connecting the two cities. The several companies were united and formed the New York Central Railroad Company, which became the owner of the entire line between Albany and Buffalo, and operated it as a single road. Immediately upon the consolidation of these companies, and the operation of the property as a single, connected line of railroad between Albany and Buffalo, the value of the property was recognized in the market as largely in excess of the aggregate of the values of the separate properties. It is unnecessary to enter into any inquiry as to the causes of this. It is enough to notice the fact. Now, when a road runs into two States each State is entitled to consider as within its territorial jurisdiction and subject to the burdens of its taxes what may perhaps not inaccurately be described as the proportionate share of the value flowing from the operation of the entire mileage as a single continuous road. It is not bound to enter upon a disintegration of values and attempt to extract from the total value of the entire property that which would exist if the miles of road within the State were

operated separately. Take the case of a railroad running from Columbus, Ohio, to Indianapolis, Indiana. Whatever of value there may be resulting from the continuous operation of that road is partly attributable to the portion of the road in Indiana and partly to that in Ohio, and each State has an equal right to reach after a just proportion of that value, and subject it to its taxing processes. The question is, how can equity be secured between the States, and to that a division of the value of the entire property upon the mileage basis is the legitimate answer. Taking a mileage share of that in Indiana is not taxing property outside of the State.

The second question must also be answered in the negative. It has been again and again said by this court that while no State could impose any tax or burden upon the privilege of doing the business of interstate commerce, yet it had the unquestioned right to place a property tax on the instrumentalities engaged in such commerce. See among many other cases, *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18.

The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put. In the nature of things it is practically impossible — at least in respect to railroad property — to divide its value, and determine how much is caused by one use to which it is put and how much by another. Take the case before us; it is impossible to disintegrate the value of that portion of the road within Indiana and determine how much of that value springs from its use in doing interstate business, and how much from its use in doing business wholly within the State. An at-

tempt to do so would be entering upon a mere field of uncertainty and speculation.    And because of this fact it is something which an assessing board is not required to attempt. Take for illustration, property whose sole use is for purposes of interstate commerce, such as a bridge over the Ohio between the States of Kentucky and Ohio.    From that springs its entire value.    Can it be that it is on that account entirely relieved from the burden of state taxation?    Will it be said that the taxation must be based simply on the cost, when never was it held that the cost of a thing is the test of its value?    Suppose there be two bridges over the Ohio, the cost of the construction of each being the same, one between Cincinnati and Newport, and another twenty miles below and where there is nothing but a small village on either shore. The value of the one will, manifestly, be greater than that of the other, and that excess of value will spring solely from the larger use of the one than of the other.    Must an assessing board in either State, assessing that portion of the bridge within the State for purposes of taxation, eliminate all of the value which flows from the use, and place the assessment at only the sum remaining?    It is a practical impossibility. Either the property must be declared wholly exempt from state taxation or taxed at its value, irrespective of the causes and uses which have brought about such value.    And the uniform ruling of this court, a ruling demanded by the harmonious relations between the States and the national government, has affirmed that the full discharge of no duty entrusted to the latter restrains the former from the exercise of the power of equal taxation upon all private property within its territorial limits.    All that has been decided is that, beyond the taxation of property, according to the rule of ordinary property taxation, no State shall attempt to impose the added burden of a license or other tax for the privilege of using, constructing, or operating any bridge, or other instrumentality of interstate commerce, or for the carrying on of such commerce.    It is enough for the State that it finds within its borders property which is of a certain value.    What has caused that value is immaterial.    It is protected by state laws,

and the rule of all property taxation is the rule of value, and by that rule property engaged in interstate commerce is controlled the same as property engaged in commerce within the State. Neither is this an attempt to do by indirection what cannot be done directly — that is, to cast a burden on interstate commerce. It comes rather within that large class of state action, like certain police restraints, which, while indirectly affecting, cannot be considered as a regulation of interstate commerce, or a direct burden upon its free exercise. We answer this question, therefore, in the negative.

These are the only matters which seem to distinguish this case from the two preceding, and, therefore, the judgment of the Supreme Court of Indiana is

*Affirmed.*

Mr. Justice HARLAN and Mr. Justice BROWN dissented from the opinion and judgment in this case upon the grounds stated in their dissenting opinion in *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company* v. *Backus,* No. 899, *ante,* 421, 437.

Mr. Justice JACKSON did not hear the arguments in this case, or take any part in its decision.