PIEDMONT & N. RY. CO. v. QUERY et al.

District Court, E. D. South Carolina.
Feb. 2, 1932.

ERNEST F. COCHRAN, District Judge, dissenting.

J. C. McGowan, of Charlotte, N. C. (Haynsworth & Haynsworth, of Greenville, S. C., and W. S. O'B. Robinson and J. H. Marion, both of Charlotte, N. C., on the brief), for complainant.

John M. Daniel, Atty. Gen., of South Carolina, and J. Fraser Lyon, of Columbia, S. C., for defendants.

Before PARKER, Circuit Judge, and ERNEST F. COCHRAN and GLENN, District Judges.

PARKER, Circuit Judge.

This is a suit instituted by the Piedmont & Northern Railway Company against the members of the South Carolina tax commission to enjoin the enforcement of an assessment of additional income taxes for the years 1926, 1927, 1928, and 1929, amounting in all to $35,426.21, against the railway company. Complainant is a South Carolina corporation. It owns two entirely disconnected lines of railroad, one entirely in South Carolina extending from Spartanburg to Greenwood, a distance of 101 miles; and the other entirely in North Carolina extending from Charlotte to Gastonia, a distance of 26 miles. These lines of railroad are 56 miles apart at the nearest point and are separately operated except as to certain expenses for general management. During the years in question complainant paid tax under the South Carolina statute on the entire net income of the railroad in South Carolina, including its earnings from interstate as well as from intrastate commerce. It paid no tax, however, on the income of the railroad in North Carolina. The defendants contend that complainant should be taxed on the net income of the intrastate traffic of the South Carolina road plus a mileage proportion of the combined net income from interstate commerce of the two roads; and the additional taxes were assessed on this basis. This results in an increased tax due to the fact that the South Carolina road is much longer than the North Carolina road, whereas the income of the South Carolina road from interstate traffic is not correspondingly greater. Its effect is to levy the increase in the tax upon the income from interstate commerce of the North Carolina road.

The statute under which the defendants are proceeding is the South Carolina Income Tax Act of 1926 as amended (Act April 22, 1927, 35 St. at Large, p. 362); and the portions thereof pertinent to this controversy are as follows:

"§ 4. (a) *Tax on corporations.*—Every corporation organized under the laws of this State shall pay annually an income tax, with respect to carrying on or doing business equivalent to four per cent. of the entire net income of such corporation, as herein de-

fined, received by such corporation during the income years; and every foreign corporation doing business within the jurisdiction of this state shall pay annually an income tax equivalent to four per cent. of a proportion of its entire net income, to be determined as hereinafter provided in this Act.

"(b) *Railroads and public service corporations: basis of ascertaining net income.*— The basis of ascertaining the net income of every corporation engaged in the business of operating a steam or electric railroad, express service, telephone or telegraph business, or other form of public service, when such company is required to keep records according to the standard classification of accounting of the Interstate Commerce Commission, shall be the 'net operating income' of such corporation as shown by their records kept in accordance with that standard classification of accounts, when their business is wholly within the jurisdiction of this state, and when their business is in part within and in part without the State their net income within the jurisdiction of this State shall be ascertained by taking their gross 'operating revenues' within this State, including in this gross 'operating revenues' within the jurisdiction of this State the equal mileage proportion within the jurisdiction of this State of their interstate business and deducting from their gross 'operating revenues' the proportionate average of 'operating expenses,' or 'operating ratio,' for their whole business, as shown by the Interstate Commerce Commission standard classification of accounts. From the net operating income thus ascertained shall be deducted 'uncollectible revenue,' and taxes paid in this State for the income year, other than income taxes, and the balance shall be deemed to be their net income taxable under this Act: Provided, That interest paid or accrued and rentals may be deducted from gross operating revenues in the event that they have not been deducted by the above provisions.

"(c) *Car hire considered.*—In determining the taxable income of a corporation engaged in the business of operating a railroad under the preceding section (Section (b), in the case of a railroad located entirely within the jurisdiction of this State, the net income shall be increased or decreased to the extent of any credit balance received or paid, as the case may be, on account of car hire; and when a railroad is located partly within and partly without the jurisdiction of this State, then said net operating income shall be increased or decreased to the extent of an equal mileage proportion within the jurisdiction of this State of any credit or debit balance received or paid, as the case may be, on account of car hire. * * *

"§ 13. *Deductions.*—In computing net income there shall be allowed as deductions: * * *

"(9) Resident individuals and corporations having an established business in another State, or investment in property in another State, may deduct the net income from such business or investment. The deduction authorized in this subsection shall in no case extend to any part of the income of resident individuals and corporations from personal services, or mortgages, stocks, bonds, securities, and deposits." Act S. C. Oct. 12, 1926 (35 St. at Large, pp. 3, 9), §§ 4 (a–c), 13 (9).

Defendants contend that, as complainant is a South Carolina corporation, that state has a right to levy an income tax upon its entire net income whether derived from interstate commerce or not; that the method followed in making the additional assessment is the one provided for assessing the income of railway corporations part of whose business is within and part without the state; that the fact that this method differs from the method adopted for taxing the income of other domestic corporations is no objection to its validity, as the state has the right to place railway corporations in a special class for the purpose of taxation; and that the fact that this method taxes a part of the interstate revenue of the North Carolina line of complainant without taxing its intrastate revenue is not a matter of which complainant can complain, as it is within the power of the state to tax its entire revenue. Complainant, on the other hand, contends that the statute when properly construed does not authorize the imposition of the tax on any part of the revenue of the line lying entirely beyond the state and not operated as a part of a system with a line within the state, but that, if construed as authorizing the imposition of such a tax, it infringes the constitutional rights of complainant; that the order of the commission imposing the tax violates the equal protection clause of the Fourteenth Amendment, in that it arbitrarily discriminates between domestic and foreign railroad corporations and also between railroad and other corporations; and that the order violates the commerce clause of the Constitution, in that it discriminates against interstate commerce in taxing the income of the North Carolina line derived from interstate commerce without tax-

ing its income derived from intrastate commerce.

The bill of complaint presents not merely the question as to the constitutionality of the statute, but also the question as to the constitutionality of the action of the South Carolina Tax Commission. Judicial Code § 266 (28 USCA § 380); Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659; Southern R. Co. v. Query (D. C.) 21 F.(2d) 333, 337. And if either of these is a substantial question under the Constitution, we must proceed with the consideration of the other questions presented; for in such case the jurisdiction of the court extends to every question involved, whether of federal or state law, even though the court may not find it necessary to decide the federal question. Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Louisville & N. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Davis v. Wallace, 257 U. S. 478, 482, 42 S. Ct. 164, 66 L. Ed. 325; Atlantic Coast Line R. Co. v. Doughton, 262 U. S. 413, 416, 43 S. Ct. 620, 67 L. Ed. 1051. We think it clear that the constitutional questions so presented are substantial.

As to the questions of classification raised under the Fourteenth Amendment, it is undoubtedly well settled that a state may classify railroad corporations separately from other corporations for purposes of taxation; but, of course, such classification must have reasonable relation to some proper legislative purpose. A classification which subjects the net interstate income of a railroad maintaining an interstate system to taxation on the mileage proportion basis clearly has such relation under ordinary circumstances; but we must consider same not in vacuo but as it affects the business of complainant, and when applying the mileage proportion basis to interstate income results in taxing the income of a line of railroad operated independently in another state, an entirely different aspect is placed upon the matter. It is hard to see any reasonable basis for taxing a railroad corporation upon business done entirely in another state while exempting other domestic corporations on out of state business. Where a line of railroad runs into other states or is a part of an interstate system, the mileage proportion of interstate income is a reasonable method of arriving at the income earned within the state, which is the basis upon which other corporations are taxed; but where a line of railroad

entirely in another state is operated not in connection with a line within the state but independently, there is ground for the contention that the application of the mileage proportion so as to subject the income earned in other states to taxation is an arbitrary discrimination against railroads. No reason can be imagined why the income earned by railroads without the state should be subjected to taxation which would not apply with equal force to the out of state income of other domestic corporations. See Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989.

And a serious question is presented as to whether the action of the commission does not constitute an unconstitutional discrimination against interstate commerce. It unquestionably does impose a tax upon the income of the North Carolina line derived from interstate commerce without taxing its income derived from intrastate commerce; and while a state may tax the entire income of domestic corporations, it cannot impose any tax in such way as to discriminate against interstate commerce. Gramling v. Maxwell (D. C.) 52 F.(2d) 256, and cases there cited. No one would contend that a tax would be valid which applied merely to the income derived by a domestic corporation from interstate commerce and did not apply to its other income; and it is difficult to see any distinction between such a case and the action of an administrative board which applies a statute in such a way as to impose a tax on the out of state income of a corporation derived from interstate commerce but not to tax its other out of state income.

The mileage proportion basis as applied to the interstate income of a railroad or a railroad system partly within the state ordinarily measures with reasonable accuracy the value of the property or the income earned within the state. Great Northern Ry. Co. v. Minnesota, 278 U. S. 503, 49 S. Ct. 191, 73 L. Ed. 477. It will not be sustained, however, where the circumstances are such that its application results in taxing the railroad on property beyond the jurisdiction of the taxing power. Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782; Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325. Likewise it should not be sustained when applied under such circumstances as to result in taxing income derived from interstate commerce by a railroad lying wholly without the state without taxing its income derived from intrastate commerce. To tax the entire net income of a domestic corporation

is one thing; to tax its income derived from interstate commerce without taxing the income from intrastate commerce is another and very different thing. And the application of a taxing system in such way as to reach out of state interstate income without reaching other out of state income raises a question under the commerce clause of the Constitution which we regard as a substantial question.

And there can be no doubt, we think, but that this question is presented by the record here. The allegations of the bill, taken in connection with geographical facts of which we take judicial notice, lead us to the conclusion that the interstate traffic handled by the line of railroad in North Carolina consists chiefly of traffic which never passes over the line in South Carolina at all, but is interstate traffic which originates beyond that state, is bound for destinations beyond that state, and does not touch the line within the state. The line in South Carolina, therefore, does not participate in earning the income attributable to this traffic, there is no reason for applying the mileage proportion to it for the purpose of determining the income of the South Carolina line, and the reasoning of Great Northern Ry. Co. v. Minnesota, supra, is not applicable. Upon the final hearing of the case it may develop that we are in error in thinking that so high a percentage of the interstate traffic handled by the North Carolina line does not touch the line in South Carolina; but in passing upon the application for the interlocutory injunction, we feel that this assumption is justified.

▆ Another question which arises is whether an interstate railroad, which draws income from a number of states, may be taxed by the state of its incorporation upon the portion of its income earned beyond the borders of the state. See note to 75 L. Ed. at page 884, 885; 44 Harvard Law Review 775. It is uniformly held that a state may tax the portion of the income earned within its borders, whether the corporation be incorporated within the state or not; but in the case of a foreign corporation it may not tax income earned beyond the state. Hans Rees' Sons v. North Carolina, 283 U. S. 123, 51 S. Ct. 385, 75 L. Ed. 879. And it is a serious question as to whether the taxation by the state of the income of an interstate railway system earned beyond its borders would not amount to a denial of due process even though the railroad were incorporated under the laws of the state levying the tax. In applying constitutional provisions, the courts regard substance and

not form; and there would seem to be little substantial basis for upholding such a tax in the case of a corporation organized under the laws of a state and refusing to uphold it in the case of a corporation organized elsewhere. The tax burdens the business of the railroad in the same way in either case; and it would seem to be as arbitrary and unreasonable in one case as in the other. The earning power resides, not in the artificial person created by law, but in its property located in the various states; and for a state to tax income earned beyond its borders in such case is in effect to tax property beyond its jurisdiction.

▆▆ It is not necessary, however, that we decide the constitutional questions so raised; for we are of opinion that under a proper interpretation of the South Carolina income tax act the assessment of the additional taxes was not warranted. The act must be construed as a whole; and when so construed we think it was clearly the intention of the Legislature not to tax the income of corporations derived from a business carried on entirely outside the state. This expressly appears from paragraph 9 of section 13, quoted above, which authorizes resident individuals and corporations to deduct the net income of business carried on in another state.

Complainant, as it is required to keep records according to the standard classification of the Interstate Commerce Commission, must in ascertaining its net income follow the provision of paragraph (b) of section 4; but there is nothing in this paragraph which forbids its claiming the deduction under section 13, paragraph 9, of the net income of the business of its railroad line in North Carolina, which is entirely beyond the state. The mileage proportion provision of paragraph (b) was clearly intended to apply in case of a railroad line or railroad system partly within and partly without the state. It was not intended, we think, to have application to a case such as this where the business of one line of railroad is wholly within and of another wholly without the state and where the two are independently operated. This appears from the very language of the statute, as well as from its reason and spirit. In paragraph (b) of section 4 the words "railroad" and "public service" are used in the singular, showing that what was contemplated in the application of the mileage proportion was a single railroad or railroad system, not two independent railroads not operated as a single system. Paragraph (c) of section 4, which provides for the addition or

deduction of car hire, bears out this interpretation; for it provides for the application of the mileage proportion "when a railroad is located partly within and partly without the jurisdiction" of the state.

It is true that the statute in paragraph (b) of section 4 distinguishes between corporations whose business is wholly within the jurisdiction of the state and those whose business is in part within and in part without the jurisdiction; but the business of no railroad which handles shipments in interstate commerce can be said, strictly speaking, to be wholly within the state. It is clear, therefore, that the language in question is loosely used and that the mileage proportion was intended to apply in such cases as mentioned in paragraph (c) where a *railroad* is located partly within and partly without the jurisdiction. The word "business" appears to have been used as a general term for covering the operations of express companies, telephone and telegraph companies, and other public service corporations, as to which "partly within and partly without" could not be accurately used, as it is of railroads in the succeeding paragraph.

It is perfectly clear that it was the intention of the Legislature to tax resident and nonresident railroad corporations on the same basis; and it must have been recognized that no power existed to tax the income of nonresidents earned beyond the limits of the state. Hans Rees' Sons v. North Carolina, supra. There were difficulties to be met in determining the income earned within the state of the typical railroad system passing through the state, such as the Southern, the Atlantic Coast Line, and the Seaboard Air Line; and it was for the purpose of determining the income earned within the state of railroads such as these that the mileage proportion of the statute was intended. As applied to them, we have no doubt that, in the absence of a showing of special circumstances rendering the application of the mileage proportion unjust and inequitable, it should be sustained as a fairly accurate and convenient method of ascertaining their income earned within the state. In the case of complainant, however, the income of its line operated in South Carolina, because this line is not physically connected with the North Carolina line, can be accurately ascertained without applying the mileage proportion formula to the interstate income of both lines, and the application of same, as shown above, results in the taxing of interstate income not earned in South Carolina. We do not think that a

proper construction of the statute requires that the formula be applied in such a case. The whole spirit of the act negatives the intention to tax income earned beyond the limits of the state, which would result from applying the formula to a case such as this.

The correct interpretation of the act, therefore, is that the mileage proportion provided by paragraph (b) of section 4 is applicable where a line of railroad or a railroad system is partly within and partly without the state. It has no application where a railroad company has two distinct lines of railroad not operated as a part of one system, one of which is entirely within and the other entirely without the state. In such case, the entire net income from both intrastate and interstate commerce of the railroad entirely within the state is to be treated as business "wholly within the jurisdiction" taxable under the first clause of paragraph (b) of section 4. As to the income from the railroad entirely without the state, this is not taxed, but falls within the spirit if not within the letter of paragraph (9) of section 13. This interpretation, we think, is not only in accord with the clearly expressed intention of the Legislature as same appears from the act when viewed as a whole, but is also in accordance with the well-established rule that, as between two possible interpretations of a statute under one of which its constitutionality will be doubtful, the court should adopt the one which is clearly in harmony with the constitutional power of the Legislature.

For the reasons stated, we think that complainant is entitled to the interlocutory injunction prayed. In reaching this conclusion, however, we have assumed the correctness of the allegation of the bill that the railroad properties in the two states are separate and distinct physical entities separately operated. Under such circumstances, it seems to us that earnings of the two lines from interstate business are readily separable, and that the mileage proportion basis of the statute was not intended to apply and does not apply. This, however, will not prejudice the right of defendants to show upon final hearing, if they can do so, that the two lines of complainant are operated as a unit or in such other way as to bring them under the provision of the statute.

Interlocutory injunction granted.

ERNEST F. COCHRAN, District Judge (dissenting).

I am unable to concur in the conclusion of the majority of the court in this case. The

application for an interlocutory injunction was made upon the bill of complaint alone. Consequently, if the facts stated in the bill do not make out a case warranting injunctive relief, the interlocutory injunction should be denied. The defendants contend that the taxes in question were justified upon two grounds: First, that the plaintiff is a domestic corporation, and even if the taxes in question are imposed upon income arising outside of South Carolina (which the defendants deny), nevertheless the state would have the right to impose taxes on income of its citizens, no matter where the income arose; and, secondly, that the act of the Legislature did not impose any taxes upon income of the plaintiff arising outside of South Carolina, and the commission has not imposed taxes upon any such income, but that the commission, pursuant to the act, has simply taken the gross interstate revenues of the system as a whole and applied the mileage proportion rule prescribed by the statute, so as to arrive at that portion of the interstate revenues which should be allocated to South Carolina, as arising within the jurisdiction of the state and therefore taxable in the state.

Upon the first proposition, I am in accord with the majority opinion. An examination of the act discloses clearly that there was no intention on the part of the Legislature to impose any taxes upon income of the plaintiff arising beyond the jurisdiction of the state. I am not myself prepared at present to hold that the state has no right to tax one of its citizens, especially an artificial citizen deriving its whole existence from the state, on income derived from sources in other states, or even beyond seas in foreign countries. It would seem that a citizen, whether artificial or natural, residing within the state, protected by the laws of the state, enjoying all the advantages to be derived from the government of the state, should be liable when necessary to pay the state upon income, no matter from what source derived. But as stated in the majority opinion, inasmuch as the Legislature has not sought to exercise this power, that question need not be decided.

But upon the second ground by which the defendants seek to justify the tax in question, I am not in accord with the majority opinion. The defendants claim that the law authorizes a tax upon income within the jurisdiction of the state, and that in the case of a railroad or other public utility, doing business partly within and partly without the state, its interstate business which should be allocated to the state shall be ascertained by taking the gross interstate operating revenues of the entire system and applying the mileage proportion rule; and that this is the course that the tax commission has pursued.

The act of 1926 and amending acts provide for an income tax both upon individuals and corporations. Section 4 (a) provides for a tax on all corporations. Section 4 (b), however, provides in the case of railroads and other public utilities which are required to keep records according to the standard classification of accounting of the Interstate Commerce Commission, when the business is part within and part without the state, the net income within the jurisdiction of the state shall be ascertained by taking the gross "operating revenues" within the state (i. e., intrastate revenues), including in this gross "operating revenues" within the jurisdiction of the state, the equal mileage proportion within the jurisdiction of the state of the interstate business (i. e., the equal mileage proportion of the entire interstate revenues of the system), and deducting from their gross "operating revenues" the proportionate average of "operating expenses" or "operating ratio" for their whole business, as shown by the Interstate Commerce Commission standard classification of accounts. In making the assessments in question, the tax commission followed this statute literally.

Now, numerous decisions of the Supreme Court of the United States hold that the mileage basis of apportionment (such as adopted here) may be adopted in the taxation of railroads, unless there is a showing that the result arrived at is arbitrary or excessive, and is in effect taxation of property beyond the jurisdiction of the court. A state may look beyond its borders when it taxes property, so that it may get the true value of the things within it, when they are part of an organic system of wide extent that gives them a value above what they would otherwise possess. In other words, the mileage proportion rule of arriving at what is within the state is ordinarily a proper method in the absence of a showing that it is arbitrary or so excessive as to demonstrate that the state is really attempting to tax property beyond its jurisdiction. Cleveland, etc., R. Co. v. Backus, 154 U. S. 439, 14 S. Ct. 1122, 38 L. Ed. 1041; Fargo v. Hart, 193 U. S. 490, 499, 24 S. Ct. 498, 48 L. Ed. 761; Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782; So. Ry. Co. v. Kentucky, 274 U. S. 76, 47 S. Ct. 542, 71 L. Ed. 934; Great Northern Ry. Co. v. Minnesota, 278 U. S. 503, 49 S. Ct. 191, 73 L. Ed. 477. Cf. Southern Ry. Co. v. Ken-

tucky, 52 S. Ct. 160, 76 L. Ed. ——, decided Jan. 4, 1932.

The only fact stated in the bill to show that the mileage proportion rule really is not applicable to this case is that the plaintiff's railroad properties in the two states "constitute separate and distinct *physical* entities, and are necessarily *so* separately operated, except insofar as certain expenses for general management, etc., are incurred for both in common." There is no allegation or showing whatever that the two component parts are not operated as a system or unit. The claim is based simply upon the lack of *physical* connection. In other words, because 26 miles lie in North Carolina, and 101 miles in South Carolina, and there is no physical connection, therefore the plaintiff argues that the tax commission had no right, in ascertaining what part of the interstate business should be allocated to South Carolina, to take into consideration that part of the interstate business which arose outside of South Carolina. I do not think the mere fact that there is no physical connection between the two component parts of the system is sufficient to warrant the court in saying that the mileage proportion method is not applicable or fair, or is excessive or arbitrary or unjust, or places a tax upon income arising outside of the state. It is true that the Supreme Court, in a number of cases upon the subject, refers to the connection of the different parts of the properties said to form a system; but I do not apprehend that the court meant to lay any stress upon the mere fact of physical connection. It is the unitary operation that is the controlling fact, that it is a part of a system that operates as a whole, and necessarily each part derives benefit from the operation as a whole. Here, this railroad was operated as a unit; had a common management; the expenses for both its physical parts for that management were paid from the system as a whole; and it must necessarily have derived great advantage in every way from its operation as an entity, although composed of distinct and separate physical parts. There is no reason whatever why all of its interstate revenues should not be considered and taken into account on the mileage proportion basis, in ascertaining the part of its interstate revenues which should be allocated to South Carolina. It is not and cannot be disputed that if there had been a physical connection between its lines, the method used by the tax commission would have been entirely proper. There can be no doubt that in the case of the Atlantic Coast Line Railroad, the Seaboard Air Line Railway, the Southern Railway, and other railroads that might be mentioned, it is perfectly proper in ascertaining the amount of interstate business allocable to South Carolina to include the interstate business of the whole system and apply the mileage proportion rule. I can perceive no reason why one rule should be applied to the Atlantic Coast Line Railroad, the Southern Railway, the Seaboard Air Line Railway, and other railroads, and a different rule applied to the Piedmont & Northern Railway, simply because its component parts are physically disconnected; and that is all that there is in this case to distinguish it.

The court should take judicial notice that the two component parts of this railroad system are located in territory that is climatically and geographically similar; that the industries and commercial life in both regions are similar, and almost identical; and that the populations of the two regions are practically homogeneous, with largely similar habits and manner of life. There is nothing in the situation of these two parts of the system which would indicate, and no facts stated in the bill showing, that either part has any advantage over the other as a revenue producer.

The plaintiff has contended that in ascertaining the net income, it is authorized to deduct all income arising outside of South Carolina, under the authority of paragraph 9 of section 13 of the act; and the majority opinion holds that paragraph (b) of section 4 does not forbid its claiming a deduction under section 13, par. 9. I do not think this is a proper construction of the act. The act provides (section 4, paragraph (b), in the case of railroads and other public utilities, for a complete scheme or plan to ascertain the net income and all deductions, expenses, etc., in the case of such corporations are provided for in that section. As to other corporations and individuals, however, in ascertaining their net income, section 13 provides for a number of deductions (expenses, wages, rentals, payments, interest, taxes, etc.), and by paragraph 9 the income from property invested in another state. None of the deductions in section 13 are available for railroads and public utilities; for all expenses, deductions, etc., allowed to public utilities and railroads are provided for in paragraph (b) of section 4.

But little need be said in reference to the plaintiff's contention that under the act of 1926 and amendments the equal mileage proportion within the jurisdiction of the state of the plaintiff's interstate business which may

be allocated to the state for purposes of income taxation is the equal mileage proportion of the plaintiff's interstate business actually transacted within the state. As I understand this contention, the plaintiff means to say that the commission should take the interstate revenues actually arising from transactions within the state, and then allocate to South Carolina a mileage proportion thereof. An examination of the act shows plainly that this is untenable. There is not a syllable in the act which would warrant the inference that the Legislature intended to allow a large portion of the plaintiff's interstate business arising in South Carolina to escape taxation. But this would be the necessary result, if the plaintiff's contention be accepted as correct. Such a construction of the statute would make a palpable and gross discrimination in favor of the plaintiff; not only as between the plaintiff and other railroads, but as between the plaintiff and other corporations and individuals.

For these reasons, I think the interlocutory injunction should be denied; but without prejudice to the plaintiff to renew the application, if the plaintiff can amend its complaint so as to allege facts (and not merely conclusions of law), supported by affidavits showing that the interstate business allocated to South Carolina by the commission is so arbitrary and excessive as to amount in effect to the imposition of taxes on property beyond the jurisdiction of the state.