[Civ. No. 12656. First Dist., Div. One. Nov. 30, 1944.]

PACIFIC FRUIT EXPRESS COMPANY (a Corporation), Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

C. W. Durbrow and Harry H. McElroy for Appellant.

Robert W. Kenny, Attorney General, John L. Nourse and James E. Sabine, Deputies Attorney General, for Respondent.

KNIGHT, J.—Plaintiff brought this action against the Franchise Tax Commissioner of the State of California to recover taxes and interest it claimed were wrongfully exacted by defendant for the tax years 1935, 1936, 1937 and 1938. The trial court found in defendant's favor, and from the judgment entered therein, plaintiff appeals.

Plaintiff's business consists principally of renting its refrigerator cars to railroads, of performing services designed to keep the cars in condition to preserve fruit, vegetables and other items shipped therein, and of repairing and reconditioning the cars. The earnings from plaintiff's business are derived chiefly from the rental of the cars, and from services performed in connection with the refrigeration, ventilation and heating of such cars. Both the rental of such cars and the performance of such services are done within the State of California, and in many other states as well, as the cars are rented to the Southern Pacific Company, the Union Pacific Railroad Company, and the Western Pacific Railroad Company and their shortline connections. The rental paid to plaintiff by the carriers for the use of its cars is computed at the rate of two and a half cents per mile for express cars, and two cents per mile for all other cars. Plaintiff made and filed its tax returns for the tax years mentioned and paid the taxes so computed, using as the basis for the returns, in computing the percentage of business done in California, the miles which the cars it had leased to the railroads were hauled in California, in proportion to the miles such cars were hauled in other states by the railroads. On this basis plaintiff allocated approximately 9 per cent of its total net income to California for the four tax years. After a hearing the Franchise Tax Commissioner, hereafter referred to as the commissioner, determined that the allocation so made by plaintiff was not a proper one, and made a reallocation on the basis of a three factor formula, consisting of property, payroll and mileage, and made an assessment based on such reallocation. Under such formula, about 26 per cent of plaintiff's total net income was taken as a measure for the four years involved. Plaintiff paid the assessments under protest, and in this action sought to recover the amount so paid.

The taxes protested were levied under the Bank and Corporation Franchise Tax Act [Stats. 1929, p. 19, as amended, Deering's Gen. Laws, 1937, Act 8488]. This act provides

for a franchise tax of 4 per cent of the net income of a corporation, not exempted, derived from business done within this state. Section 10 of the act (as amended, chap. 275, Stats. 1935) provides: "If the entire business of the bank or corporation is done within this State, the tax shall be according to or measured by its entire net income; and if the entire business of such bank or corporation is not done within this State, the tax shall be according to or measured by that portion thereof which is derived from business done within this State. The portion of net income derived from business done within this State, shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property, or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State and to avoid subjecting the taxpayer to double taxation. If the commissioner reallocates net income upon his examination of any return, he shall, upon the written request of the taxpayer, disclose to him the basis upon which his reallocation has been made."

The allocation method of taxation of the income of a corporation such as this, engaged in a unitary business within and without the State of California, was approved in *Matson Nav. Co.* v. *State Bd. of Equalization,* 3 Cal.2d 1 [43 P.2d 805], affirmed 297 U. S. 441 [56 S.Ct. 553, 80 L.Ed. 791]; also in the later case of *Butler Brothers* v. *McColgan,* 17 Cal.2d 664 [111 P.2d 334], affirmed 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991], wherein the court said: "In such case as the instant one [a unitary, interstate business], allocation of income to the various states in which the business is done by means of a formula that gives weight to the various factors such as property, services of employees and sales, which are responsible for the earning of income, appears entirely reasonable. To rebut the presumption that the formula produced a fair result, 'the burden is on the taxpayer to make oppression manifest by clear, cogent evidence.' (*Norfolk & Western Ry. Co.* v. *North Carolina* (1936), 297 U.S. 682, 688 [56 S.Ct. 625, 80 L.Ed. 977].)" ▪ Furthermore, since a suit to refund taxes is in the nature of an action in assumpsit, the taxpayer may recover only if it be shown that more taxes have been exacted than in equity and good conscience should have been paid. *(Stone* v. *White,* 301 U.S. 532 [57 S.Ct. 851,

81 L.Ed. 1265] ; *Lewis* v. *Reynolds,* 284 U.S. 281 [52 S.Ct. 145, 76 L.Ed. 293].)

The main contentions made by plaintiff in support of the appeal are that the statute does not prescribe a definite method, rule or formula for allocation; that the commissioner is without authority to originate and prescribe a formula or method for allocation of net income; and that the formula prescribed by the commissioner is contrary to such direction as is contained in the statute, is arbitrary and insufficient. The determination of these questions necessitates a more detailed description of the nature and scope of plaintiff's business, since the purpose of allocating the net income, where the entire business of the corporation is not done within this state, is to fix the tax according to the portion or amount of net income which is derived from business done within this state; in other words, the tax is to be calculated so as "to assign to the State the portion of net income reasonably attributable to the business done within this State. . . ." (§ 10 of the act.) The following are the essential facts as they appear from the stipulation of facts on which the action was tried, and from the findings of the trial court: In connection with its business plaintiff employs people to perform various duties, such as persons chosen to perform executive and clerical functions, to perform repairs and to perform icing and other preservative operations with respect to the refrigerator cars. It also maintains within California and elsewhere, either under ownership or lease or hire, property, including rolling stock and property with a fixed location, such as icing platforms, ice houses, ice manufacturing plants, ice ponds, ice storage plants, offices and office buildings, car repair shops, car yards, storage and repair tracks and other facilities and property. Furthermore it owns repair shops and yards where any heavy repairs and reconstruction necessary to keep its cars in good condition are with rare exceptions made. It does these heavy repairs and reconstruction in its own shops because to do so is more economical than to have it done by independent contractors. Running repairs, that is, those repairs necessary to meet requirements of the federal safety appliance acts and regulations thereunder and to keep cars in suitable condition for efficient and satisfactory operation, are made by the railroads on the lines of which plaintiff's cars happen to be when such repairs become necessary. These running repairs are made under rules of

the Association of American Railroads, which rules prescribe the charges to be made therefor, and the charges are based on average cost of such repairs to all railroads in the country, and may have no relation to the actual cost of the particular repairs in the particular locality where they are made. Over half of the total repairing and rebuilding done by plaintiff is done in its California shops, and over 70 per cent of its total payroll for persons employed in repairing its car is for persons employed by it in its car shops in California. Most of the shipments carried in the cars leased by plaintiff to the railroads originate in California. The percentages of total shipments so originating were 62.44 per cent in 1934, 63.82 per cent in 1935, 61.74 per cent in 1936, and 64.05 per cent in 1937. A substantial portion of plaintiff's net income is derived from its icing operations in pre-cooling and cooling the cars. Plaintiff derives a larger profit from its icing operations when it uses ice manufactured by itself than when it uses ice purchased from others. Most of the icing operations in California are performed with ice which plaintiff manufactured for itself, and most of such operations in other states are performed with ice purchased by plaintiff from others. Over half of plaintiff's total icing operations are performed in California. In 1934, 59 per cent, in 1935, 62 per cent, in 1936, 63 per cent, and in 1937, 60 per cent of the cars which were iced in California and then moved out of the state were not iced again prior to reaching their destination. A table showing the relation existing in the various states (only those in which an amount in excess of 1 per cent of the mileage of plaintiff's cars is run) between mileage, ice manufacture and use, and repairing done by plaintiff, discloses the following: Plaintiff makes repairs and manufactures ice in only a few of the states through which its cars are hauled by the railroads. It makes repairs in only nine states, and in five of those states the combined repairs amount to less than 2½ per cent while over 56 per cent of the total repairs made by plaintiff are made in California. No other state approaches the figure for California, the nearest state being Idaho, with less than 16 per cent. Plaintiff has car repair shops in only three states; and of plaintiff's six car repair shops, three are in California. It manufactures ice in only seven states, and over 63 per cent is manufactured in California. No other state approaches this figure, the nearest again being Idaho with slightly over 8 per cent.

The stipulation of facts was offered in evidence subject to the objections and exceptions of both plaintiff and defendant. No definite ruling was made thereon by the trial court, but the stipulation of facts was adopted and made part of the findings of fact, the court thereby in effect having overruled all objections thereto.

Plaintiff's first point that the statute does not provide any formula, rule or standard for the allocation of net income, is based apparently upon the contention that such a statute should prescribe a fixed and precise formula which must be used in all cases regardless of the nature of the business in which the particular corporation is engaged, and regardless of the obvious fact that a single formula cannot be devised which will operate equitably as to all corporations. In this regard plaintiff argues that while the statute directs that an allocation shall be made upon the basis of "sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property, or by reference to these or other factors," it does not say how any factors shall be considered or put together in a mathematical computation. In other words, it is asserted that the statute by stating five factors on which allocation can be made and then saying that an allocation may be made by reference to these or other factors is left "wide open" so that it provides no formula for the computation of the tax. We are unable to sustain plaintiff's view.

Flexibility is recognized not only as a desirable but an essential feature of any workable system for the allocation of income, whereas a single, rigid statutory formula would doubtless be productive of injustice in particular cases, and lead to unconstitutional results as to certain corporations, since it would be impossible to make it adaptable to different types of business. For example the precise formula that was applied in fixing the tax in the Matson case, *supra,* which was upheld by the courts, would not be workable in the present case; nor could the formula applied in fixing the tax in the Butler Brothers case, *supra,* which was likewise sustained by the courts, have been used in either the Matson case or the present one; and again the formula used in this case could not be made workable in either of the other two cases. Examples of unconstitutional results flowing from the adoption of an inflexible formula are found in several adjudicated cases. Thus the same formula which was prescribed by the Connecti-

cut Legislature and held constitutional in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 [41 S.Ct. 45, 65 L.Ed. 165], was prescribed by the North Carolina Legislature. Its use was therefore compelled in the case of *Hans Rees' Sons* v. *North Carolina,* 283 U.S. 123 [51 S.Ct. 385, 75 L.Ed. 879], and the resulting tax in that case was held unconstitutional as a denial of due process because it taxed income derived from other states. Another example is where the use of the mileage factor, which was upheld in *Norfolk & Western Ry. Co.* v. *North Carolina,* 297 U.S. 682 [56 S.Ct. 625, 80 L.Ed. 977], was required by statute to be used in another case and its use there was held unconstitutional in *Piedmont & N. Ry. Co.* v. *Query,* 56 F.2d 172. (See, also, *Wallace* v. *Hines,* 253 U.S. 66 [40 S.Ct. 435, 64 L.Ed. 782].)

Among the hypothetical cases which may be suggested as demonstrating the unsoundness of plaintiff's argument in favor of a rigid formula are the following: A personal service corporation may not use property at all in its business, or may use very small amounts of office furniture. Manifestly, in such a case, to use the property factor and to treat it on an equality with the payroll factor would result in a distorted allocation of income. Or take the case of a corporation which merely owns railroad cars subject to a long term lease and which does not maintain or repair them, or perform any other services at all, so that its entire income, gross and net, is derived from the rental of the cars; in such case, only the property factor would have any significance and a factor such as sales would be inapplicable. In fact plaintiff's own expert witness, Mr. Holbrook, definitely expressed the need for flexibility of formula when in answer to a question as to whether it was possible to allocate income between states with absolute and scientific accuracy he replied: "Well, I have always felt that considerable latitude should be allowed for special cases, and different kinds of corporations, and the character of the business, rather than trying to define a set formula."

The argument advanced by plaintiff that section 10 of the act prescribes an unworkable formula is completely negatived by the decisions rendered in the Matson and Butler cases, *supra,* which sustained the formulas there employed; also by the fact that section 10 has been in actual operation for some fifteen years.

Nor is there any merit in plaintiff's contention that

the statute does not give the commissioner authority to employ formulas or methods of allocation. By section 22 of the act he is in express terms made the administrator of the act; and section 25 thereof imposes upon him the duty to examine the returns made by taxpayers and to make deficiency assessments if not satisfied with the returns so made; and obviously the legislative intent to authorize him to employ a formula for the allocation of the income in case the taxpayer has used an improper one, is clearly shown by the inclusion in the section of the last paragraph thereof, which reads: "If the commissioner reallocates net income upon his examination of any return, he shall, upon the written request of the taxpayer, disclose to him the basis upon which his reallocation has been made." Moreover, the decisions rendered in the Matson and Butler cases, *supra*, may be taken as indicating the view that the statute does authorize the commissioner to apply formula allocation; otherwise the formulas therein adopted and applied by the commissioner could not have been sustained.

Plaintiff further contends that if section 10 of the act does give the commissioner the authority to adopt a formula to fix the tax, it constitutes an illegal delegation of power; that the taxing power of a state is vested exclusively in the Legislature, and taxes can be imposed only in pursuance of legislative authority, and that therefore the act in that respect is unconstitutional. We do not agree with this contention. In 1929, article XIII, section 16, subdivision 5 of the Constitution read as follows: "The legislature *shall define 'corporations'* and 'doing business'; *shall define 'net income'* and may define it to be the entire net income from all sources; *shall provide for the allocation of income,* for the assessment, levy and collection of the aforesaid taxes. . . ." In 1933, section 16 was amended, and subdivision 2 thereof reads: "The Legislature *may provide by law* for the taxation of corporations, their franchises, or any other franchises, by any method not prohibited by this Constitution or the Constitution or laws of the United States." (Italics added.) And it has been held under similar provisions of the Constitution that the Legislature need not prescribe the exact method by which the tax is to be fixed, but may delegate to its taxing officers the power to adopt a suitable method. (*Utah Construction Co.* v. *Richardson,* 187 Cal. 649 [203 P. 401].) In that case the Constitution (article XIII, § 14(d)) in authorizing the imposition of the old corporation franchise tax, de-

clared that the assessment of franchises should be made "in a manner provided by law." Although the Legislature in establishing the tax provided that the actual valuation of franchises for assessment purposes should be determined by the State Board of Equalization, the court held that this delegation of power to the board was "in the manner provided by law" as required by the Constitution. Similarly, if the power delegated to the State Board of Equalization in that case is upheld as valid, it is difficult to see how the delegation of power to the Franchise Tax Commissioner in the Bank and Corporation Franchise Tax Act can be held invalid. Such is the view expressed in an exhaustive article written by Mr. Justice Traynor, then a member of the faculty of the School of Jurisprudence, University of California, soon after the adoption of the Bank and Corporation Franchise Tax Act in 1929, wherein among other things the author stated: "Although the question is by no means free from doubt, it is submitted that the authority granted the Franchise Tax Commissioner is not in violation of the Constitution. In the first place, the power of allocation given the Commissioner seems to be permissible under the wording of the constitutional provision; for, while it states that the legislature 'shall *define* "corporations", shall *define* "net income"'. as to allocation, it reads 'the legislature . . . shall *provide for* the allocation of income.' It would, therefore, seem that if the intent had been that the legislature should make the specific allocation the section would have read, 'shall allocate' instead of 'shall provide for the allocation of.' Therefore, it is submitted that in delegating to the Commissioner the power of determining upon the allocation under certain rules, the legislature was 'providing' for the allocation of income within the meaning of the constitutional provision." (17 Cal.L.Rev. pp. 509-510.)

As stated, the article was written soon after the adoption of the Bank and Corporation Franchise Tax Act in 1929, and the soundness of the conclusion reached therein, that there had been no invalid delegation of power to the commissioner, would seem to be attested to by the fact that during the fifteen years intervening since the act was adopted, thousands of allocation problems have been acted upon every year by the commissioner, and several cases involving section 10 of the act have gone to the United States Supreme Court; but in no case has it been held that the provisions of section 10 constituted an unlawful delegation of legislative power.

As supporting its contention that if the act delegates the authority to the commissioner to adopt a formula such delegation of power is illegal, plaintiff cites a number of cases from other jurisdictions concerning unconstitutional delegations of taxing power. None of the statutes involved in those cases, however, seem to present the same problems as those raised by the California statute. Several of the cases involve attempts on the part of the taxing body to allocate income where no statutory authority to allocate existed. For the reasons stated, the cases so cited are not determinative of the issue here involved.

 Plaintiff's contention that the formula adopted by the commissioner is contrary to the directions contained in the act and is arbitrary and insufficient, is based mainly upon the ground that although the act provides that five or more factors shall be taken into account in adopting a formula, the commissioner's formula is based on only three, one of which is "wages, salaries, commissions and other compensation of employees." In that factor the commissioner included the payroll of plaintiff for the labor employed by it in the manufacture of ice and in icing its cars, and making the repairs thereto; but he excluded therefrom and refused to make any allowance for the out-of-state expenses incurred by plaintiff for labor furnished by various railroads in repairing cars in conformity with the rules prescribed by the Association of American Railroads, and for cost of ice and the icing of its cars furnished by railroads and commercial firms under contract. Plaintiff contends, therefore, that the commissioner's formula does not fairly represent the cost of the effort which enters into the production of plaintiff's net income, and that the formula should be corrected at least to the extent of including the additional out-of-state labor costs, which would result in reducing plaintiff's assessment.

The justification for the refusal is placed by the commissioner upon the ground that the employees furnishing such labor were not plaintiff's employees, and that the activities of the employees of an independent contractor performing a contract with the taxpayer are not activities of the taxpayer. We are of the opinion that the reason so given for the refusal is not sound, for as will be seen, the expenses thus incurred were necessary to the operation of plaintiff's business, and that being so, it would seem that plaintiff was entitled to an allowance thereof, irrespective of whether the labor was per-

formed by its own employees within the state or by others, under contract, out of the state. However, it does not follow that plaintiff is entitled to a refund of any taxes, for as heretofore pointed out, a taxpayer may recover a refund only if it be shown that he has paid more taxes than in equity and good conscience he should have been required to pay; and in the present case plaintiff has failed to show that the formula applied resulted in the payment of more taxes than in equity and good conscience it should have paid, or that under the formula applied it had paid a tax measured by more than the amount of net income reasonably and fairly attributable to the business done in this state. On the contrary, while the use of the mileage factor, as used by plaintiff as the sole basis of its allocation, allocated approximately only 9 per cent of plaintiff's net income to California, the record shows that over 50 per cent of plaintiff's property other than rolling stock is in California; that between 55 per cent and 60 per cent of its payroll is for services performed in California; that its principal office is here, and that it here maintains business and accounting offices where some part of its general management and its general accounting are performed; that over 56 per cent of the total repairs made by plaintiff are made in this state; over 63 per cent of the ice manufactured by plaintiff is manufactured in California, and over 50 per cent of plaintiff's icing activities are performed in California. However, the commissioner allocated only some 26 per cent of the total net income to business done in California, and this was largely brought about by the use by the commissioner of the mileage factor as the basis for determining the amount of plaintiff's rolling stock within and without the state for purposes of the property factor in the formula, and also car mileage was included by the commissioner as one of the factors in the three-factor formula. It would seem, therefore, that the formula used by the commissioner was much more favorable to plaintiff than the situation warranted, and that even though allowances should have been made for out-of-state labor performed under contract, the amount of taxes called for by the commissioner's formula was not more than plaintiff in equity and good conscience should have been required to pay.

The fact that the commissioner's formula was based on only three of the five factors specified in the act did not constitute a violation of the section, for as will be noted, under the broad provisions thereof, the commissioner is authorized

to determine the net income derived from business done within this state by an allocation upon those specified factors, ''or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the State the portion of net income reasonably attributable to the business done within this State. . . .''

Plaintiff makes the additional point that the commissioner's formula runs afoul of the law relating to extraterritorial and double taxation. The basis of its argument is that there is a wide variation of formulas prescribed by the different states through which its cars are operated, and that according to a table appearing in the record, if the commissioner's three-factor formula is permitted to be used in California and a mileage basis prorate were to be used in all other states, the total tax measure for all states for the year 1934 would be 117.9344 per cent of plaintiff's net income for that year, thus showing a double taxation on at least 17.9344 per cent of plaintiff's net income. As pointed out in the commissioner's brief, however, there was no showing made by plaintiff that all of the states through which plaintiff's cars were hauled by the railroads imposed a net income or franchise tax; nor was any showing made that all or any of the other states allocated any such taxes on the mileage basis; and that as a matter of fact it appears from the record that the State of Kansas proposed to assess plaintiff on a mileage basis, but on plaintiff's request applied a different formula. In that state of the record it cannot be said that plaintiff has been or will be subject to any double taxation.

The final point made by plaintiff is in substance but a repetition of its contention that it was entitled to have the amount of its taxes fixed on a mileage basis; and the facts justifying the rejection of an allocation of net income on that basis have already been pointed out. Whatever other contentions are made by plaintiff in support of its appeal are deemed to be without sufficient merit to require special attention.

The judgment is affirmed.

Ward, J., concurred.

PETERS, P. J.—I concur.

I agree with all portions of the majority opinion except that portion which holds that the commissioner should have included in his formula sums paid to out-of-state independent

contractors for repair of the cars. In my opinion, the commissioner correctly excluded that item.

As the majority opinion clearly and correctly points out, the statute confers discretionary powers upon the commissioner in drafting a formula. The purpose of the formula is to ascertain, within reasonable limits, the portion of the net income which is derived from doing business in this state. The purpose of the formula is not to ascertain what the net income is, but what portion of the total net income is reasonably attributable to business done in this state. The majority opinion states that the out-of-state expenses "were necessary to the operation of plaintiff's business, and that being so, it would seem that plaintiff was entitled to an allowance thereof, irrespective of whether the labor was performed by its own employees within the state or by others, under contract, out of the state." In my opinion that holding indicates a confusion of thought as to the issue involved. If we were considering what the net income of this company was, of course, the sums paid to the out-of-state independent contractors would constitute a deductible expense. But that is not the issue. Here there is no dispute over the amount of net income. The dispute is over whether the formula adopted is reasonably designed to allocate to California that portion of the total net income "which is derived from business done within this State" as provided in section 10 of the act. The commissioner decided that that result could be achieved by a three-factor formula. He determined that that result could be reasonably achieved by considering the property, the payroll, and the mileage of this concern. There were many other factors he could have considered, including sales and purchases, and other factors. He believed that these factors would not help in ascertaining the proportion of this company's income derived from business done in this state. In considering the payroll factor he considered every cent paid to any employee of the company in all the states where this company operates. But, say the majority, he should, in addition, have included sums paid not to employees but to independent contractors. What that amounts to is saying that the three-factor formula was unsound and that this fourth factor should have been included. This fourth factor is completely independent of any of the three factors used by the commissioner. It differs in no respect from any other purchase made by the company. Yet purchases were not included. If the commissioner had

failed to include an item within any of the three factors he used, there would be merit in the contentions of appellant. But the sums paid to independent contractors have no necessary relation to the business done by this company in this or any other state, any more than other purchases made by the company would necessarily have reflected the amount of business done. The necessary implication of the majority opinion is that the three-factor formula used was improper and that this fourth factor, as a matter of law, should have been included. If sums paid to independent contractors must be included as a fourth factor, why should not all purchases be included?

I believe the three-factor formula used was admirably adapted to ascertain the only question then before the commissioner—i.e., what proportion of the net income was derived from business done within this state—and that the factor of sums paid to independent contractors for repairs introduces a totally false issue into the case.

With this exception I heartily concur in the reasoning and holding of the majority opinion.

On December 30, 1944, the opinion was modified to read as above and a petition for modification was denied. Peters, P. J., voted for modification.