## ASTORIA PLYWOOD CORPORATION *v.*
## DEPARTMENT OF REVENUE

Lawrence M. Dean, Macdonald, Dean, McCallister & Snow, Astoria, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered April 21, 1975.

CARLISLE B. ROBERTS, Judge.

The plaintiff, a Washington corporation doing business in the State of Oregon, manufacturing plywood at Astoria, Oregon, appealed from defendant's Order

No. VL 73-716, dated December 26, 1973, relating to the value of the land and the improvements thereon contained in Assessor's Account Nos. 0101 809 9CB 6800 and 0101 809 8DA 300, as of January 1, 1973. The defendant and the County Assessor of Clatsop County had entered into an agreement, pursuant to ORS 306.126, making the appraisal of the subject property a departmental responsibility of the defendant.

The defendant advised the county assessor that as of January 1, 1973, the bare land contained in the two accounts should be valued at $70,320 and the improvements at $2,046,740, for a total of $2,117,060. The plaintiff appealed the assessor's values (established by the defendant) to the county board of equalization, which affirmed the value of the land but reduced the value of the improvements to $1,680,010, for a total of $1,750,330.

The court viewed the property.

For January 1, 1973, the defendant had undertaken a full, physical reappraisal and evaluation of the plaintiff's entire plant coming within the Oregon statute's description of real property, ORS 307.010. However, the land itself is not here in dispute. Mr. Lloyd G. Honeysette, the defendant's appraisal engineer entrusted with the determination of the appraised value as of January 1, 1973, summarized the values in Defendant's Exhibit E, at 1:

| | Assessor's Acct. Nos. | |
| --- | --- | --- |
| | 0101 809 9CB 6800 | 0101 809 8DA 300 |
| Buildings and structures | $ 402,790 | $ 25,340 |
| Machinery and equipment | 1,611,160 | 8,450 |
| Market value as of 1/1/73* | $2,013,950 | $ 33,790 |

* The court observed the total appraised value in defendant's Order No. VL 73-716 was $2,046,740. Mr. Honeysette's total was $2,047,740, without explanation of the $1,000 difference. The official order has been deemed by the court as constituting defendant's position.

In its complaint, plaintiff recites the appraisal by the defendant of the improvements of plaintiff corporation in the sum of $2,046,740 (for the two tax accounts), the reduction thereof by the board of equalization to $1,680,010, and contends that the improvements (presumably for both accounts) should be in the sum of $1,313,294 and prays the court that it determine the true cash value of said improvements. At the trial, plaintiff admitted that it had no quarrel with the valuations found for Assessor's Account No. 89 8DA 300 (designated No. 0101 809 8DA 300 in the defendant's order) and it presented no evidence respecting the value of buildings and structures, leaving in dispute only the value of the machinery and equipment in Assessor's Account No. 89 9CB 6800 (designated No. 0101 809 9CB 6800 in the defendant's order). By deducting the undisputed amounts ($506,900) from plaintiff's alleged total value for all accounts of $1,-313,294, it appears that its true cash value for machinery and equipment, as of January 1, 1973, in Assessor's Account No. 89 9CB 6800 would be $806,394, as against defendant's $1,611,160, a difference of 50 percent.

Plaintiff's only witness to testify on the value of machinery and equipment gave a value to that classification in Account No. 89 9CB 6800 of $1,105,432 (37 percent greater than the value contended for in plaintiff's complaint and 31 percent less than the value asserted by defendant). The duty of the court is to determine which of the parties should be considered as having adduced the "preponderance of the evidence" (ORS 305.427), i.e., such evidence as when considered and compared with that opposed to it is more convincing to the court and produces in its mind a belief that what is sought to be proved is more likely true than the evidence offered in opposition. *See Cook v. Michael,* 214 Or 513, 525-528, 330 P2d 1026 (1958); *Sattes v.*

*United States,* 63-2 USTC ¶ 9755, 12 AFTR2d 5757 (SD W Va 1963).

Defendant's sole witness, who established the values utilized by the county assessor, was Mr. Honeysette. He has been employed by the Department of Revenue in the Industrial Section of the Assessment and Appraisal Division during the last twelve years. He is a graduate of Oregon State University in engineering, and has taken appraisal courses at Portland State University.

To meet the minimum requirements of the appraisal cycle, ORS 308.234, the witness was instructed by the defendant "to arrive at a market value of the unit of property which is all of those components which are generating an income for Astoria Plywood * * *." He spent several days in the plant and had interviews with the plant manager and the office manager, prepared field notes (Def Ex C) and considered the usual approaches to value. He first gave attention to the market data approach in which sales of comparable property are sold by willing sellers to willing buyers, all parties being knowledgeable in the premises, and the particular property having been exposed to the market for a reasonable period of time. This method is generally accepted as the best evidence of value for purposes of taxation. *See Portland Canning Co. v. Tax Com.,* 241 Or 109, 404 P2d 236 (1965). The witness found 15 sales of plywood plants in Oregon through the years 1964 to 1972 and rejected them all as not comparable to the subject property. The sale considered by him as most comparable was the sale of a plant at St. Helens, Oregon, from Crown Zellerbach Corporation to Multnomah Plywood Corporation in 1968, which, with adjustments, would indicate the value of the subject property to be $2,666,600 on the assessment date. However, even this sale was not deemed to be sufficiently comparable, a conclusion

heartily endorsed by plaintiff's witness, Mr. Elmer Brown, general manager of the plaintiff corporation at Astoria, who for four years had been the manager of the plant at St. Helens and has managed the subject property during the last seven years and is intimately knowledgeable with respect to both plants. He has been active in plywood production since 1926.

Defendant's witness also considered the income approach to value (see Def Ex E, at 7, 52-56). He has given it only a passing reference in his testimony before the court for the reasons set out in Defendant's Exhibit E, at 7:

> "The income approach has generally been held by the courts to be of negligible importance in valuing special purpose, owner-operated properties when other valuation data is available and appropriate. These properties are unique and do, in the course of producing a return on the invested capital, involve many agents in production. The credibility of the approach is reduced by the necessity of allocating income, that is generated from the 'whole' property, to the segment described as our 'unit of property.' "

This left only the cost approach to value. Defendant's witness made a full study of subject property under this approach, breaking it down into three separate "techniques": Technique No. 1, Reproduction Cost New; Technique No. 2, Replacement Cost New; and, in deference to the Supreme Court's decision in *Astoria Plywood Corp. v. Dept. of Rev.*, 258 Or 76, 481 P2d 58 (1971), Technique No. 3, Replacement Cost Used. In correlating these techniques (Def Ex E, at 10-11), he gave a weight of .10 to the first, .85 to the second, and .05 to the third. His rationale for the slight weight placed on Technique No. 3 is set out in Defendant's Exhibit E, at 6:

> "This technique is not recognized by the American Institute of Real Estate Appraisers as an ac-

cepted tool of the appraisal profession. We resort to the technique in this appraisal to comply with what appears to be a mandate of the Oregon Supreme Court, in the decision rendered in the 1968 Astoria Plywood case. Our interpretation of that decision is as follows: The starting point in the cost approach should not be reproduction cost new or replacement cost new *if* there have been, and are, prices available for used components, that have sold in the market place, such as at auctions or through machinery dealers. Replacement cost used becomes the starting point for this technique. We, of course, must keep in mind that our 'unit of property' under appraisement are the real property improvements of the operating plant. Therefore, the used prices of components obtained in the market place are at a different level of trade and must be tempered in a number of different ways before they can be incorporated into our starting point. The condition of the unit that sold used, must be equated to the condition of the unit that is being valued. When components sell at auction many of them go into used machinery dealers inventory and are held for resale and we must consider removal costs, transportation, repairs and renovation expense and mark up for dealers profit. Many components that must be valued have never been sold in the 'used market.' In that case we have reviewed lists of used machinery and equipment, published by machinery dealers, that are offering for sale various types of plywood equipment."

The values determined by these methods have been set out above. Although subjected to a most rigorous examination as an adverse witness and upon cross-examination, he saw no reason to change his testimony. He understood his methods and, with difficulty, was able to explain them. Although some errors have been detected by the court (e.g., the omission of the value of some unused equipment), the testimony carries conviction.

Mr. James Shull, the only witness presented by plaintiff to testify as to the value of machinery and equipment, is a man unusually qualified to testify on the value of used and new plywood machinery as found in the market because of his long years of experience as a dealer in such equipment. *See Astoria Plywood Corp., supra, affg* 4 OTR 122 (1970). He was very knowledgeable as to the machinery and equipment found in the subject property, but appears not to have been formally trained as an industrial appraiser. His experience has given him an intuitive sense of value for most units of plywood mill machinery. His approach to value followed no consistent method. (He did testify that, because of the amount of new equipment in the plant as of January 1, 1973, he was constrained in many instances to use replacement cost new, and he believed he understood the methods involved in that approach.) It is of chief significance to the trier of fact that the witness made no special appraisal of the plant for the January 1, 1973, values, as did the defendant. He used the method of appraisal maintenance described in *Astoria Plywood Corp. v. Dept. of Rev.,* 6 OTR 40 (1975). As stated in that case, he used two different starting points, one being the appraisal made by him for values as of January 1, 1968, and the other based upon the values for that year found by the judge of the Oregon Tax Court in *Astoria Plywood v. Dept. of Rev.,* 4 OTR 122 (1970).

Although the court has found the maintenance method described in *Astoria Plywood Corp., supra,* as acceptable, in the absence of better evidence, there appears to be no way in which it can be approved in preference to a complete physical appraisal of the property made by an experienced appraiser, as was offered in evidence by the defendant in the present case.

■ All property appraisal work is highly subjective and easily distorted. Few "comparables" are used in practice without "comparability" being based on a number of adjustments, all highly subjective. Each of the customary approaches to value has its own questionable aspects. Ideally, a complete physical appraisal by a competent appraiser, close to the assessment date, is sought and, when achieved, carries with it greater weight than any time-saving "maintenance method."

The defendant's Order No. VL 73-716 is affirmed.