# ASTORIA PLYWOOD CORPORATION
*v.*
# DEPARTMENT OF REVENUE

Lawrence M. Dean, Macdonald, Dean, McCallister & Snow, Astoria, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered November 2, 1977.

CARLISLE B. ROBERTS, Judge.

Hitherto, plaintiff has appealed the question of the true cash value of its real property, consisting of a plywood mill and the land on which it was and is situated, located in Astoria, Oregon, for the assessment dates January 1, 1969, 1970, 1971 (*Astoria Plywood Corp. v. Dept. of Rev.,* 6 OTR 40 (1975)), and for January 1, 1973 (*Astoria Plywood Corp. v. Dept. of Rev.,* 6 OTR 57 (1975)). The present appeal deals with

the same property, Assessor's Account No. 89 9CB-6800 and Account No. 89 8DA-300. This industrial property was appraised for Clatsop County by the Department of Revenue's appraisal engineers at the request of the county assessor. ORS 306.126. The current appeal is from the defendant's Order No. VL 76-166 (dated April 2, 1976), determining the true cash value of the subject property for the assessment date January 1, 1974.

The Department of Revenue's appraisers supplied the county assessor with figures showing a total true cash value of the two accounts in the sum of $2,261,950. In accordance with the statute, ORS 308.215(1)(e) and (g), the total assessed value of the two accounts was shown for the land and for the improvements at $70,320 and $2,191,630, respectively. Upon appeal by the taxpayer, a reduction in value was made by the county board of equalization. The county assessor appealed to the defendant to restore the values. The department's order and the pleadings are not clear as to the breakdown of respective values determined for land, buildings and machinery but the parties have stipulated that the value of the land in the two accounts was $70,320; that the value of the improvements (including buildings and machinery and equipment), as found by the defendant, was $2,191,630; and that of the value of the improvements, the defendant attributed $587,180 to the buildings and $1,604,450 to the machinery and equipment. On appeal to the court, the plaintiff accepted defendant's value of the land and buildings and structures but contested the value of the machinery and equipment. Plaintiff contends that the value of the machinery and equipment should be reduced from the defendant's allocation of $1,604,450 to $917,000, the amount determined by its principal witness, Mr. W. M. Sexton. (*See* Pl Ex 1.)

In determining the value approved by the court for the assessment date January 1, 1973, defendant had

undertaken a full, physical reappraisal and evaluation of the plaintiff's entire plant coming within the statutory description of real property, ORS 307.010. In that case, too, the value attributed to the land and buildings and structures was not disputed, but plaintiff contended that the value of the machinery and equipment for the two accounts should not exceed $814,844, while defendant claimed, and the court affirmed, a value of $1,619,610.

In this case, the plaintiff, having conceded the values ascribed to the land and to the buildings and structures, chose Mr. Willis M. Sexton for its appraiser and principal witness, offering him as an expert in the valuation of machinery and equipment. Mr. Sexton retired in 1972 after serving as a loan officer in a major bank for 19 years. His principal work was to study loans requested by the wood products industry, to be secured by the borrower's machinery and equipment. Although a Senior Member of the American Society of Appraisers, he admitted on the witness stand that he was not qualified to appraise real property and that when the bank made a loan on a plywood plant, his sole function was to establish the value for loan purposes of the machinery and equipment. He had never made an appraisal for tax purposes. His procedure, when studying a loan application, was to contact dealers and salesmen in the used equipment market for estimates of the value of items of the anticipated collateral and then to recommend a loan of 80 percent, 60 percent, or 30 percent of the total values found, depending on the borrower.

In his written appraisal report (Pl Ex 1), the witness notes that he had only a short time to prepare the appraisal, but as of September 28-29, 1976, he personally inspected the machinery and equipment constituting a part of the subject property. Plaintiff had provided the witness with a copy of the Department of Revenue's "1973 Appraisal Field Notes for Astoria Plywood Corporation for 1-1-73 Est. of Market Value" (Def Ex D). Exhibit D is a document of 58

[ 267 ]

legal-sized pages containing hand-written notes describing all the buildings and structures and machinery and equipment, dated January 10 and January 11, 1973, evidencing the physical reappraisal and evaluation of the plaintiff's entire plant by Mr. Lloyd G. Honeysette, referred to in 6 OTR 57 (1975). In the preparation of his appraisal document, plaintiff's witness had copied the descriptions of machinery and equipment, taken verbatim from Exhibit D, omitting the columnar figures, enabling him to insert his own estimates of value in that space.

There is no doubt in the court's mind that the plaintiff's witness worked diligently and honestly, but Plaintiff's Exhibit 1 is not the work of a professional property appraiser. (An example is the lack of a certification of the value estimate. *See* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 379-398 (5th ed 1967).) The report reflects technical deficiencies which were reiterated in the testimony of the witness. For example, the witness, upon being queried as to the three traditional approaches to property value, incorrectly described them as the Reproduction Cost New, Replacement Cost New, and Market Value.[1] The witness scorned the Replacement Cost New technique but his testimony demonstrated that he did not define the term in accordance with the standard appraisal terminology.[2] He deprecated the use of Reproduction Cost New less Depreciation, a cost approach method, but nevertheless appeared to adopt that method (used in Def Ex D)[3] in the preparation of his Exhibit 1. He relied heavily

---

[1] "For many years, it has been accepted appraisal practice to use three separate approaches to real estate value, commonly known as the Market Approach, Income Approach, and Cost Approach. * * *" *Encyclopedia of Real Estate Appraising* 10 (Friedman ed, rev & enlarged ed 1968). *See also,* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 60-66 (5th ed 1967); International Association of Assessing Officers, *Assessing and the Appraisal Process* 2-3, 45, 62, 79 (5th ed 1974).

[2] *See* American Institute of Real Estate Appraisers, *Appraisal Terminology and Handbook* (5th ed 1967).

[3] *Astoria Plywood Corp. v. Dept. of Rev.,* 6 OTR 57, 61 (1975).

on the used equipment market and incorrectly defined Market Value as: "What you purchase a similar piece of equipment for, transport and install it" in the mill.[4] He testified that the Income Approach to Value could not be used with used equipment,[5] that the only place to obtain the value of the used equipment found in the subject property was to go to the used equipment market.

■ Although purporting to use Market Value, again and again the values of items of machinery and equipment used by him appeared to be related to salvage, not to value in a going concern. He failed to recognize that the unit of value under discussion, basically, was the plywood plant, a going concern, the highest and best use of which was to be found in its continuing operation.[6] The witness admitted that, as a source of value, he was looking for sales of used

_____

[4] "Market value" is defined in ORS 308.205 and OAR 150-308.205.

[5] The market value sought by the defendant in its Opinion and Order No. VL 76-166 was the value of all of the real property owned by plaintiff as of January 1, 1974, at its highest and best use in the form of an operating plywood mill. The professional appraiser would consider the Income Approach as an important indicator of value in appraising an income-producing property and would find no reason for discarding it because that part of the realty described as machinery and equipment was used equipment.

[6] As stated in the old but oft-cited decision, *Cleveland &c. Railway Co. v. Backus,* 154 US 439, 445-446, 14 S Ct 1122, 1124, 38 L Ed 1041, 1046 (1894):

"The rule of property taxation is that the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put. In the nature of things it is practically impossible—at least in respect to railroad property—to divide its value, and determine how much is caused by one use to which it is put and how much by another. * * * An attempt to do so would be entering upon a mere field of uncertainty and speculation. And because of this fact it is something which an assessing board is not required to attempt. * * *"

equipment and not for the sales of plywood plants. (He agreed that he had never seen a newly built plywood plant which began operations with used equipment.)

The witness testified that when he determined the market value of new and used equipment, he took into consideration the cost of transportation of such equipment to the millsite, and its installation in the several buildings (involving foundations, intricate electrical controls, electrical wiring, necessary pipes and blowers, and the like). However, he disallowed all of the defendant's "engineering values"[7] on the grounds that they were "used up years ago." His notes in Exhibit 1 show that he added installation costs only in the case of a few very large items. He admitted in his testimony that he had overlooked the cost of electrical hookups and installations in several instances. It is particularly notable that he gave no value to a machine's foundation when he found it still to be sound and in no need of replacement. On cross-examination, he finally agreed that foundations were a continuing part of the category of "machinery and equipment" which had a value for property tax purposes. (It appeared that, in his initial concept, the foundations could be prepared by the regular mill hands, except in rare instances, and therefore cost nothing.)

His failure to regard the plaintiff's property as an operating, going concern was repeatedly revealed in his testimony. His thinking was that of a lender of money who might have to rely upon selling the property piecemeal in order to recover his capital. For example, extensive and necessary piling was of no value in his appraisal, because "How are you going to sell it?" A 50-foot conveyor, necessary to plaintiff's

---

[7]The defendant, in its Exhibit D (1973 Appraisal Field Notes for Astoria Plywood Corporation for 1-1-73 Est. of Market Value), based upon studies it had made respecting the cost of designing a plywood plant, including the incorporation of machinery and equipment therein, inserted an engineering factor of 5 percent of the original cost of a machine unit, and then amortized this cost at the same rate as used for physical depreciation.

operation, consisting of trough, supports, braces, chains, and an electric motor, valued by the defendant at $990, was judged to be worth $500 for the motor only (obviously based upon an abandonment of the enterprise). Another example was his treatment of the defendant's valuation of $1,050 for a working, operable sluice gate. This was reduced by the witness to a "scrap value" of $350 because a sluice gate can't be sold on the market. A tray system, with useful life in the mill, couldn't be sold as an item on the market so no value was given to it.[8]

Carelessness in the appraisal, evidenced in Plaintiff's Exhibit 1, was also noted. The witness had learned that a tray system, valued by the defendant at $4,050, had been taken out of the plant in 1974, so gave no value to it. However, the evidence shows it was in place on January 1, 1974, the assessment date, and should have been valued. The witness's totals, shown in Plaintiff's Exhibit 1, were incorrect in some instances, each a reduction in value.

After checking the inventory of equipment, plaintiff's witness utilized the catalogs of used equipment dealers and made telephone calls to the dealers' salesmen to determine current sales prices of such equipment. The testimony causes the court to conclude that he did not make personal comparisons or use personal judgment. He testified that with regard to the installation costs of large units, noted by him, he depended on "what they gave me," ("they" being used equipment salesmen or plaintiff's plant management).

It also appears to the court that in respect to many items of machinery and equipment, the witness used the state's basic value and then merely substituted his own concept of depreciation by mechanically reducing the state's "percent good" by 10 percent.

---

[8]The witness overlooked ORS 308.205 which sets out a rule to be followed by the state and county appraisers with respect to property which has no immediate market value.

The changes in items of machinery and equipment by additions and deletions between the appraisal for January 1, 1973, and January 1, 1974, the assessment date applicable in this case, were small in terms of money (*see* Def Ex B) but should have been considered. There was no evidence that the witness took note of them.

■ In these particulars, as in other aspects of the work, the witness did not comport himself as a trained, independent, knowledgeable property tax appraiser, even with respect to his limited area of machinery and equipment. He did not demonstrate to the court the knowledge of the experienced appraisal engineer or of the experienced machinist in measuring deterioration of machinery and equipment, evidenced by wear and tear or defect, to determine the remaining useful life in the mill. The court has no confidence in his final estimate of value.

For its appraisal of machinery and equipment for January 1, 1974, the defendant adopted the court's approved January 1, 1973, figure of $1,619,610 as a beginning point and then used the "Report Method" for updating its appraisal to January 1, 1974. This method is described in *Astoria Plywood Corp. v. Dept. of Rev.*, 6 OTR 40, 41-48 (1975). The method was fully explained by Mr. Glenn B. Coxen, the defendant's witness in the present case. Mr. Coxen is the supervisor of the Industrial Section, Assessment and Appraisal Division, Department of Revenue, a man with exceptional training, experience, and expertise in the field of industrial appraisals (and recognized by election to high office in the American Society of Appraisers). The appraisal work done by Mr. Coxen's division, under his supervision and with his active participation, as testified to by him, readily made a prima facie case supporting the conclusions of the department in its Order No. VL 76-166.

■ Defendant's "Report Method" of appraisal, especially when adjusted only for one year following a

physical appraisal of the plant, carries substantial testimonial weight. In this instance, it unquestionably is evidentially preponderant and sustains the burden of proof. ORS 305.427.

Defendant's Order No. VL 76-166 is affirmed.

Costs are awarded the defendant.